```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF VIRGINIA

                        Alexandria Division

                                  )
SIGNATURE FLIGHT SUPPORT          )
CORPORATION,                      )
                                  )
     Plaintiff,                   )
                                  )
                                  )
          v.                      )    1:08cv955 (JCC)
                                  )
                                  )
LANDOW AVIATION LIMITED           )
PARTNERSHIP,                      )
                                  )
     Defendant.                   )
                                  )
```

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Landow Aviation Limited Partnership's (Defendant) Motion for Summary Judgment on Count III of Signature Flight Support Corp.'s (Plaintiff) Amended Complaint.  For the following reasons, the Court will grant the motion.

### **I. Background**

Plaintiff is a Fixed Base Operator (FBO) operating numerous FBOs at airports throughout the United States, including Washington Dulles International Airport (Dulles).  FBOs are airport service centers that offer aircraft handling, fuel, parking, maintenance, de-icing, ground services, baggage handling, crew rooms, passenger lounges, and related services to

1

the general aviation and charter aviation industries - non-commercial aviation industries.

In 1997, Plaintiff entered into a concession contract with the Metropolitan Washington Airports Authority (MWAA) (Concession Contract), which set forth the terms and conditions under which Plaintiff operates an FBO at Dulles. There are two FBOs licensed to operate at Dulles: Plaintiff and Landmark Aviation (Landmark). The Concession Contract also awarded Plaintiff an option on an undeveloped parcel of land at Dulles contiguous to its FBO. In 2004, Plaintiff exercised this option and entered into a supplemental agreement (Supplemental Agreement) with the MWAA setting forth Plaintiff's rights in the parcel. At that time, it also entered into a Ground Sublease Agreement (GSA) with Defendant. In the GSA, Plaintiff "passed through" some of its rights and obligations under the Concession Contract and Supplemental Agreement to Defendant.

Under the GSA, Defendant is authorized by both Plaintiff and the MWAA to build and operate the Dulles Jet Center (Center), a corporate hangar facility adjacent to Plaintiff's FBO facilities. The GSA gives Defendant responsibility for designing and building the Center, but prohibits it from acting as an FBO. The GSA gives Plaintiff the exclusive right to provide fuel and de-icing services to Defendant's clients, to direct and service all arriving transient aircraft, and to direct "overflow"

transient traffic to Defendant, if necessary.  The GSA also provides for "Fuel Revenue Sharing" between Plaintiff and Defendant.  Under the relevant provisions, Plaintiff agrees to pay Defendant nine percent of its net margin on all fuel purchased from Plaintiff by aircraft based at the Center, subject to exceptions for two specific permittees.

Defendant designed and built the Center and, on October 24, 2006, the MWAA issued Certificates of Occupancy for the "shell" of the Center.  Defendant also undertook to build-out specific spaces within the Center to suit the needs of individual permittees or sublessees that would be based at the Center. Defendant entered into General Aviation Hangar, Office and Shop Space Use Permits with these permittees.

On September 15, 2008, Plaintiff filed a complaint against Defendant (Complaint) alleging breach of contract (Count II) and intentional interference with (Count III).  They request a declaratory judgment (Count I), an accounting and disgorgement (Count IV), and permanent injunctive relief (Count V). Plaintiff's claims are based on its allegations that, since the opening of the Center in 2006, Defendant has improperly expanded the scope of the services that it provides by holding itself out as an FBO, providing FBO services, and invading the business that Plaintiff and the MWAA have reserved to Plaintiff.

On October 17, 2008, Defendant filed a Motion to Dismiss Count III. The Court granted this motion without prejudice on November 17. Plaintiff filed an amended complaint restating Counts I, II, IV, and V, and bringing Count III for intentional interference with prospective business or economic advantage, on December 2, 2008 (Amended Complaint). Defendant again moved to dismiss Count III; the Court denied that request on January 13, 2009.

Defendant now moves for summary judgment in its favor on Count III based on the following testimony: (1) Michael H. Bennett (Bennett), current Assistant General Manager and former General Manager of Plaintiff at Dulles, testified that Plaintiff did not perform a "study or analysis" regarding which FBO the transient aircraft using the Center would have used in the absence of Defendant's alleged misrepresentations, and (2) John G. "Cy" Farmer (Farmer), Plaintiff's Regional Vice President, could not list the names of those transient aircraft to which Defendant had made false or disparaging statements about Plaintiff and the dates on which they were made without "some time to think and prepare a list of names." He also could not repeat any of the allegedly false and disparaging statements alleged in the Amended Complaint from personal knowledge. Plaintiff opposed Defendant's motion on April 27, 2009; Defendant replied on April 30, 2009. This motion is before the Court.

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted). The party seeking summary judgment has the initial burden to show the absence of any dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once a motion for summary judgment is properly made and supported, the opposing party bears the burden to show that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. The party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Id.* (quotation omitted). A "mere scintilla" of evidence, *id.* at 248-52, or unsupported speculation, *Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986), are insufficient to withstand a motion for summary judgment. In reviewing the record on summary judgment, "the court must draw any inferences in the light most

favorable to the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

### IV. Analysis

In Count III of the Amended Complaint, Plaintiff alleges a claim for intentional interference with a business expectancy. Am. Compl. ¶ 90. To prevail on such a claim, a plaintiff must prove:

> (1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued the relationship or realized the expectancy; and (4) damage to plaintiff.

*Smithfield Ham & Prods. Co. v. Portion Pac, Inc.* 905 F. Supp. 346, 349 (E.D. Va. 1995) (citations omitted). In addition, "the plaintiff must show that the defendant's actions were improper." *Id.* (*citing Duggin v. Adams*, 360 S.E.2d 832, 836 (Va. 1987); *Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 337 S.E.2d 744, 748 (Va. 1985)).

Methods that have been recognized as "improper" include (1) "means that are illegal or independently tortious," (2) "violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship," (3) means that "violate an established standard of a trade or profession,"

6

(4) "[s]harp dealing, overreaching, unfair competition," or "other competitive conduct below the behavior of fair men similarly situated." *Duggin v. Adams*, 360 S.E.2d at 836-37 (internal quotations and citations omitted) (collecting cases).

Defendant agrees, for the purposes of its motion, that Plaintiff has adequately established the first and second elements of Count III: the existence of a business relationship or expectancy with a probability of future economic benefit to Plaintiff and Defendant's knowledge of that relationship or expectancy. The issues presented by this motion, then, are whether there is a dispute of material fact regarding the third and fourth elements of Plaintiff's claim of intentional interference with a business expectancy. And, if not, whether Defendant is entitled to summary judgment on this count. Because the Court finds that Defendant is entitled to summary judgment on the third element, it will not discuss the fourth element.

    A.    <u>Element 3: Reasonable Certainty that, Absent Defendant's Intentional Misconduct, Plaintiff Would have Continued the Relationship or Realized the Expectancy</u>

This element can be broken into two parts. First, whether Plaintiff has shown a dispute of material fact regarding Defendant's alleged intentional misconduct, and second, whether Plaintiff has shown a dispute of material fact regarding the relationship between the misconduct and Plaintiff's failure to realize its business expectancy.

7

1.  *Defendant's Alleged Statements to the MWAA*

Plaintiff first alleges that Defendant committed misconduct by disparaging Plaintiff's services to the MWAA. Pl.'s Mem. in Opp'n Ex. 39 (June 3, 2008 letter from Defendant to the MWAA).[1] Defendant submits that, even assuming that these statements were improper and constitute misconduct, Plaintiff cannot show any relation between Defendant's alleged misrepresentations to the MWAA and Plaintiff's alleged failure to realize its business expectancy in its former transient customers. Plaintiff fails to specifically respond to this assertion.

The Court finds that Plaintiff has not met its burden to show that a genuine dispute of material fact exists on this element with respect to the effect of Defendant's communications with the MWAA. None of the evidence before the Court shows, or even implies, a connection between Defendant's statements to the MWAA and Plaintiff's alleged loss of business expectancy. Plaintiff would not be able to prove this element at trial. The Court will grant summary judgment to Defendant on Count III to the extent that it relies on Defendant's statements to the MWAA.

---

[1] This letter is not hearsay because Plaintiff does not offer it to prove the truth of the statements within it, but only to show that Defendant communicated with the MWAA about Plaintiff's services.

> 2. *Defendant's Alleged Statements to Transient Customers and Third Parties*

Plaintiff also alleges that Defendant made false or misleading statements to Plaintiff's loyal and repeat transient customers as well as to some unspecified third parties. It submits that these statements concerned four topics: (1) the nature of Defendant's business, (2) the services Defendant was authorized to provide, (3) the quality of Plaintiff's services, and (4) Plaintiff's fuel prices. Pl.'s Mem. in Opp'n 4.

The Court finds that neither of the first two topics is a proper basis of a claim for intentional interference with a business expectancy. The nature of Defendant's business and the services that it is authorized to provide are dictated by the contract between the parties. *See* GSA § 4.1. This tort claim may proceed solely on allegations that Defendant breached a common-law duty "to refrain from making false, misleading, and deceptive statements regarding Signature's business to [t]ransient aircraft, [the] MWAA and other third parties." Mem. Op. of Jan. 13, 2009 at 13 (disposing of Defendant's motion to dismiss the amended complaint). Plaintiff's current allegations - that Defendant misrepresented the nature of its own business and the services it could provide - fall outside this description. Any liability arising from such statements stems only from the contracts between the parties; Plaintiff may only pursue these allegations through its breach of contract claim.

9

The remaining two categories of Plaintiff's allegations involve Defendant's alleged misrepresentations about the quality of Plaintiff's services and Plaintiff's fuel prices.  Defendant argues for summary judgment in its favor on these allegations because, it asserts, Plaintiff possesses no admissible evidence whatsoever to support them.  In assessing this assertion, the Court will look not only at whether Plaintiff provides specific first-person testimony on this issue, but also at whether it presents sufficient admissible evidence from which the fact-finder could properly infer that the complained-of conduct occurred.

This is because, at trial, Plaintiff will bear the burden of proof on this issue, but it may prove it through a variety of means, including inferences that the fact-finder may draw from the evidence before it.  *Morton v. Virginia*, 408 S.E.2d 583, 584 (Va. App. 1991) (*citing County Court of Ulster v. Allen*, 442 U.S. 140, 156 (1979) ("Inferences . . . are elemental ingredients of the fact finding process.").  "An inference . . . permits a finder of fact to conclude the existence of one fact from the proof of one or more other facts."  *Id.* (*citing Carter v. Hercules Powder Co.*, 28 S.E.2d 736, 740 (Va. 1944)).  "A 'natural and rational evidentiary relationship' must always exist 'between the fact proven and the ultimate fact presumed.'"  *Id.* at 585 (*quoting Sharp v. Virginia*, 192 S.E.2d 217, 219 (Va. 1972); *Burnette v. Virginia*, 75 S.E.2d 482, 485 (Va. 1953)).

        a.   <u>Defendant's Alleged Misrepresentations</u>

Defendant, in bringing this motion, relies on the testimony of Mr. Farmer, who stated that he could neither list the names of those transient aircraft to which Defendant had made false or disparaging statements, nor repeat any of the allegedly false and disparaging statements from personal knowledge. Def.'s Mem. in Supp. Ex. B 325-28 (Farmer Depo.). It then notes that Plaintiff has not offered testimony from any of the persons to whom Defendant allegedly made its misrepresentations.

In opposition to the motion, Plaintiff submits a number of exhibits to support its allegations regarding Defendant's alleged statements about Plaintiff's services at Dulles. First, it submits entries from various FBO directories[2] and correspondence from the Center referring to Defendant as an FBO.[3] None of these exhibits contains even the slightest implication that Defendant breached a common-law duty "to refrain from making false, misleading, and deceptive statements regarding Signature's business to [t]ransient aircraft . . . and other third parties."

---

[2] Pl.'s Mem. in Opp'n Exs. 19 (2009 listing for the Center in AC-U-QUIK), 20 (deposition testimony regarding the AC-U-QUIK), 21 (the Center's insertion request for an FBO listing in AC-U-QUIK), 22 (deposition testimony regarding the Center's listings at fltplan.com, airnav.com, and the AC-U-QUIK North America and international FBO guides), 23 (the Center's listing at airnav.com), 24 (the Center's listing at fltplan.com, 26 (advertisement referring to the Center as an FBO).

[3] Pl.'s Mem. in Opp'n Exs. 27 (July 6, 2008 letter from the Center to a new customer referring to the Center as an FBO), 28 (e-mail from the Center to a first-time transient customer calling the Center "the only FBO in the DC area that offers transit hangar space"), and 31 (employment advertisement referring to the Center as "the newest FBO at Dulles International Airport).

Mem. Op. of Jan. 13, 2009 at 13. Instead, these documents relate to Defendant's alleged misrepresentations about its *own* services. Any wrongdoing by Defendant that may be evidenced by these documents is clearly based in the contracts between the parties, not tort law.

Plaintiff also submits correspondence between Defendant and its lower-level employees[4] and transient customers regarding Defendant's intent to seek fuel rights from the MWAA.[5] Plaintiff asserts that this correspondence shows that Defendant "actively solicited" Plaintiff's transient customers and exclusive right to provide certain services for itself. Pl.'s Mem. in Opp'n 8. Again, if the conduct evidenced by these documents was improper, it was only so because it violated the parties' agreements, not a common-law duty by Defendant not to make misrepresentations about its competitor's services.

Next, Plaintiff submits e-mails from Defendant to its employees instructing them to demand quality service from Plaintiff and to inform the Center's tenants that Plaintiff's fuel pricing was misleading and that Defendant was trying to

---

[4] Pl.'s Mem. in Opp'n Exs. 30 (e-mail from the Center's assistant manager instructing Center employees to collect aircraft tail numbers for a marketing mailing list).

[5] Pl.'s Mem. in Opp'n Exs. 38 (e-mail from the Center's assistant manager to transient customers requesting their assistance with the "'break away from Signature Flight Support' campaign and Defendant's request for "permission from MWAA to sell our own fuel"), 43 (letter to Defendant from The Dow Chemical Company's Director of Corporate Aviation offering support in its efforts to obtain fueling and de-icing rights).

address it.[6]  Plaintiff appears to argue that, from these documents, the fact-finder could imply that Defendant's employees not only acted on this instruction with respect to *the Center's tenants*, but that either the sender or the recipients decided to further act and make intentional misrepresentations about Plaintiff's service and fuel pricing to *Plaintiff's transient customers*.

Finally, Plaintiff submits the deposition testimony of Mr. Farmer, in which he gives a third-hand account of alleged defamatory statements by Defendant to Plaintiff's transient customers, Pl's Opp'n Ex. 2 (Farmer Depo.), and an e-mail from a Signature employee giving a first-person account of Nate Landow's vehement and foul-languaged criticisms of Signature in front of pilot and passengers of the aircraft with tail number 872EC, Pl.'s Mem. in Opp'n Ex. 37 (employee's e-mail).  Plaintiff does not argue, or submit evidence to show, that 872EC was one of Plaintiff's loyal transient aircraft, rather than a Center-based customer.  This final document, however, is the only first-person account of Defendant's alleged misrepresentations about Plaintiff.

---

[6] Pl.'s Mem. in Opp'n Ex. 36 (e-mail from the Center's assistant manager instructing Center employees to be "polite and FIRM" in their dealings with Signature, to "NOT LET UP ON THEM UNTIL OUR CUSTOMERS ARE SERVED TO THE HIGHEST STANDARDS OF THE INDUSTRY," and to "let the tenants know" that Signature's fuel pricing "'smoke and mirrors' are not fooling anyone and [the Center] is doing everything we can to combat this." (emphasis in original)).

The Court notes that, while Plaintiff submitted a large amount of evidence in opposition to Defendant's motion, the majority of it appears intended to distract from their lack of evidence regarding these issues, rather than to support their claim.  Plaintiff has not submitted any testimony from its current or former transient customers regarding Defendant's alleged misrepresentations to them.

       b. <u>Effect on Plaintiff's Loyal Transient Customers</u>

Defendant further argues that "there is no evidence in the record" supporting any connection between the allegedly false or misleading statements to Plaintiff's transient customers and Plaintiff's failure to realize its business expectancy in those customers.  Def.'s Mem. in Supp. 7.  In making this argument, Defendant relies on Mr. Bennett's testimony that "transient aircraft make decisions . . . based on a whole variety of factors, including convenience, price, quality of service and other factors."  Def.'s Mem. in Supp. Ex. A 50:20-51:3.  Given the multiplicity of factors that transient aircraft consider, Defendant submits, Plaintiff's sparse evidence does not demonstrate that it would have realized its alleged business expectancy absent Defendant's misconduct.

In response, Plaintiff submits its National Sales Detail Report, which includes a "listing for each time [certain] aircraft visited Signature's Dulles FBO location, and each time

14

the aircraft visited the Dulles Jet Center." Pl.'s Mem. in Opp'n Ex. 7-11. It shows the expenses incurred by those aircraft that decided to use the center for parking, landing, handling fees, and ancillary services. Pl.'s Mem. in Opp'n Ex. 7-11. Plaintiff submits that this document shows that certain "loyal and repeat" customers of Plaintiff began using the Center's services and have not returned to Signature. Pl.'s Mem. in Opp'n Ex. 7-11. Plaintiff argues that, from this evidence, the fact-finder could infer a causal relation between Defendant's misconduct and Plaintiff's lost customers. Pl.'s Mem. in Opp'n 28 (*citing Simbeck, Inc. v. Dodd-Sisk Whitlock Corp.*, 44 Va. Cir. 54 (1997)). Plaintiff has not, however, submitted any testimony from current or former transient customers regarding whether or how Defendant's alleged misrepresentations affected their decisions to patronize the Center instead of Signature.

c.   Analysis

Viewing all of the evidence in the light most favorable to the non-moving party, the Court finds that Plaintiff has failed to set forth evidence sufficient to withstand Defendant's motion for summary judgment. The only business expectancy that Plaintiff claimed is in its continued provision of services to "all transient aircraft on Signature's premises at Dulles, including the C[enter]." Am. Compl. ¶ 74; *see also* Am. Compl. ¶¶ 73-82. Thus, regardless of to whom Defendant allegedly made statements, the only result relevant to this claim is the effect

those statements had on Plaintiff's transient customers.

The four relevant documents submitted by Plaintiff, and the inferences fairly attributable to them, must be sufficient permit "a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. As noted above, a "mere scintilla" of evidence, *id.* at 248-52, or unsupported speculation, *Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986), is insufficient to withstand a motion for summary judgment. Here, a reasonable fact-finder could not determine with reasonable certainty that, absent Defendant's intentional misrepresentations about Plaintiff's services, Plaintiff would have realized its business expectancy in providing FBO services to some of the aircraft that have moved to the Center.

Signature's alleged expectancy was that it would retain its customers as long it met their FBO demands better than Landmark, its sole competitor at Dulles. The undisputed evidence shows that, when the Center opened, transient aircraft were presented with three service-provider options instead of two. At that point, Plaintiff alleges, some of its formerly loyal and repeat customers began patronizing the Center. The fair inference is that, but for the Center, Plaintiff would have continued to realize its expectancy in those customers. However, there is simply no evidence on the record to support the further

inference that Defendant's alleged misrepresentations were the motivating factor behind these customers' decisions.

The undisputed evidence shows that transient aircraft consider a myriad of factors when choosing a service provider. Def.'s Mem. in Supp. Ex. A 50:20-51:3. Faced with a complete lack of rebuttal evidence on this issue from Plaintiff, the fact-finder simply could not conclude, with "reasonable certainty," that Plaintiff's previously loyal customers would not have moved to the Center absent Defendant's alleged misrepresentations. *See RFE Indus., Inc. v. SPM Corp.*, 105 F.3d 923 (4th Cir. 1997) (finding that Plaintiff's former customers had migrated to Defendant because of Defendant's lower prices for the same product).

    B.    <u>Element 4: Damage to Plaintiff</u>

Finally, Defendant argues that Plaintiff cannot satisfy the fourth element of its claim. The Court finds that it need not address this element because Plaintiff's claim fails on element three, discussed above. Plaintiff has not met its burden to show that disputed issues of material fact remain with respect to the third contested element of its claim for intentional interference with a business expectancy. For this reason, the Court will grant Defendant's motion for summary judgment on Count III of the Amended Complaint.

## IV. Conclusion

For these reasons, the Court will deny in part and grant in part Defendant's motion.

An appropriate order will issue.


June 12, 2009                          _____/s/_____
Alexandria, Virginia                           James C. Cacheris
                                    UNITED STATES DISTRICT COURT JUDGE