**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

_____
                                                        )
SIGNATURE FLIGHT SUPPORT CORPORATION,       )
a Delaware corporation                                  )
                                                        )
                    Plaintiff/Counterclaim Defendant,   )
                                                        ) Civil Action No.: 1:08cv955 (JCC)
                                                        )
          v.                                            )
                                                        )
LANDOW AVIATION LIMITED PARTNERSHIP,        )
a Virginia limited partnership                          )
                                                        )
                    Defendant/Counterclaim Plaintiff.   )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR ATTORNEYS' FEES AND
<u>RELATED COSTS OF SIGNATURE FLIGHT SUPPORT CORPORATION</u>**

Respectfully submitted,

**Nixon Peabody LLP**
Louis E. Dolan, Jr. (VSB No. 34437)
401 9th Street, N.W., Suite 900
Washington, DC 20004-2128
(202) 585-8000
(202) 585-8080 (facsimile)
ldolan@nixonpeabody.com

*Attorneys for Plaintiff/Counter Defendant
Signature Flight Support Corporation*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

BACKGROUND ........................................................................................................1

ARGUMENT ............................................................................................................6

    I.     SIGNATURE IS ENTITLED TO REASONABLE ATTORNEYS'
          FEES UNDER THE *JOHNSON* FACTORS ..........................................................8

          A.     Signature's Request For Attorneys' Fees Is Proportional to The
                 Reasonable Amount of Time and Labor Spent Litigating the Issues
                 in this Case (*Johnson* Factor #1) ..................................................................9

               1.     The Issues In This Case Were Heavily Litigated ............................9

               2.     Discovery in this Case Necessarily Required Significant
                       Attorney Time ...............................................................................13

               3.     Signature's Main Litigation Team Was Leanly Staffed ...............15

          B.     This Case Entailed Difficult and Complex Legal Issues
                 (*Johnson* Factor #2) ...................................................................................15

          C.     Signature's Experienced and Reputable Legal Team Possessed
                 the Requisite Skill to Properly Perform the Required Legal Services
                 (*Johnson* Factors #3 and #9) .....................................................................17

          D.     Customary Fees (*Johnson* Factor #5) .......................................................17

          E.     This Matter Was Litigated Under Significant Time Constraints
                 (*Johnson* Factor #7) ...................................................................................19

          F.     This Litigation Involved Extremely Valuable Property and
                 Contract Rights, and Signature's Victory Will Affect  Dulles
                 Jet Center's Obligations Under the Ground Sublease Agreement
                 For Decades (*Johnson* Factor #8) ............................................................19

    II.     SIGNATURE IS ENTITLED TO ITS REASONABLE COSTS INCURRED
          IN THIS LITIGATION ........................................................................................24

CONCLUSION .......................................................................................................26

# TABLE OF AUTHORITIES

**Cases**

*Budd v. Gondles*,
  Nos. 88-0118-A; 88-0119-A; 88-0120-A, 1988 U.S. Dist. LEXIS 18387
  (E.D. Va. November 22, 1988) .................................................................................... 19

*Christopher Phelps & Associates, LLC v. Galloway*,
  492 F.3d 532 (4th Cir. 2007) ....................................................................................... 23

*Corinthian Mortgage Corp. v. Choicepoint Precision Marketing, LLC*,
  1:07cv832 (JCC) 2009 U.S. Dist. LEXIS 723 (E.D. Va. January 5, 2009) ...................... 9, 18, 23

*County Sch. Bd. of York Co. v. A.L.*,
  No. 4:03cv174, 2007 U.S. Dist. LEXIS 16395 (E.D. Va. March 6, 2007) ................................ 12

*Daly v. Hill*,
  790 F.2d 1071 (4th Cir. 1986) ......................................................................................... 8

*Dennis v. Columbia Colleton Med. Ctr.*,
  290 F.3d 639 (4th Cir. 2002) .......................................................................................... 9

*Double K. Properties, LLC v. Aaron Rents, Inc.*,
  No. 1:03cv00044, 2003 U.S. Dist. LEXIS 20441 (W.D. Va. November 13, 2003) ................... 9

*Dunkin Donuts Inc. v. Mercantile Ventures, Inc.*,
  EP-91-CA-154, 1994 U.S. Dist. LEXIS 19753 (W.D. Tx. August 11, 1994) ........................... 20

*E.E.O.C. v. Service News Co.*,
  898 F.2d 958 (4th Cir. 1990) .......................................................................................... 8

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ......................................................................................................... 8

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ....................................................................................... 8, 9

*Kraft Foods of North America, Inc. v. Banner Engineering & Sales, Inc.*,
  446 F. Supp. 2d 551 (E.D. Va. 2006) .............................................................................. 6

*Lerner v. Gudelsky Co.*,
  230 Va. 124, 334 S.E.2d 579 (1985) ................................................................................ 7

*Mullins v. Richlands Nat'l Bank*,
  241 Va. 447, 403 S.E.2d 334 (1991) ................................................................................ 7

*Plyer v. Evatt*,
 902 F.2d 273 (4th Cir. 1990) ................................................................... 8, 17, 18

*Rum Creek Coal Sales, Inc. v. Caperton*,
 31 F.3d 169 (4th Cir. 1994) ......................................................................... 8, 18

*Superior Form Builders v. Dan Chase Taxidermy Supply Co., Inc.*,
 881 F.Supp. 1021 (E.D. Va. 1994), *aff'd*, 74 F.3d 488 (4th Cir. 1996)....................................... 8

*Toy's "R" Us, Inc. v. Abir*,
97 Civ. 8673, 1999 U.S. Dist. LEXIS 1275 (S.D. N.Y. February 10, 1999).............................. 20

**Statutes**

Fed. R. Civ. P. 26(b)(4)(C)(i) ............................................................................ 24

Fed. R. Civ. P. 54(d)(2)(A)............................................................................. 1, 6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

_____
                                                                )
SIGNATURE FLIGHT SUPPORT CORPORATION,           )
a Delaware corporation                          )
                                                                )
                    Plaintiff/Counterclaim Defendant,     )
                                                                ) Civil Action No.: 1:08cv955 (JCC)
                                                                )
        v.                                      )
                                                                )
LANDOW AVIATION LIMITED PARTNERSHIP,            )
a Virginia limited partnership                  )
                                                                )
                    Defendant/Counterclaim Plaintiff.      )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF MOTION FOR ATTORNEYS' FEES AND**
**RELATED COSTS OF SIGNATURE FLIGHT SUPPORT CORPORATION**

Plaintiff/Counterclaim Defendant, Signature Flight Support Corporation ("Signature"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 54(d)(2)(A) and this Court's March 17, 2010 Order ([Dkt. No. 273]), submits its Memorandum of Points and Authorities in Support of its Motion For Attorneys' Fees and Related Costs. For the reasons set forth below, Signature requests an award of attorneys' and other professional fees in the total amount of $1,570,616, costs and expenses in the total amount of $204,350.19, and interest thereon from the date of entry of judgment.

**BACKGROUND**

Immediately upon the opening of the Dulles Jet Center ("DJC") in October, 2006, Landow Aviation Limited Partnership ("Landow") began holding the facility out as a fixed base operator ("FBO") to the general aviation community at the Washington Dulles International

Airport.  The Dulles Jet Center provided the services of an FBO by handling and soliciting the transient general aviation market.  It also interfered with Signature's authorized FBO rights there.  *See* March 17, 2010 Memorandum Opinion ("Mem. Op.") at 10-11 [Dkt. No. 272].  For over three years, Landow circumvented the Metropolitan Washington Airport Authority's ("MWAA") public procurement process, improperly competed with Signature for the FBO concession rights it has held at Dulles since the 1960's, and denied Signature and MWAA the revenues they were entitled to.  *See id.* at 1-3, 5-6, 32.  Landow also undertook a campaign to get out from under its contract obligations and "break away" from Signature by obtaining the lucrative fueling rights that, by agreement of the parties, were exclusively Signature's.  *Id.* at 13-14.  Landow did this by crafting a contrived set of complaints relating to Signature's fuel servicing operations that it refused to allow Signature to address, and then petitioned MWAA to grant it fueling rights.  The transparent motives of Landow were apparent first to MWAA, which denied the request after being fully briefed by Signature, *See id.* at 14, and later to this Court. They were particularly evidenced by Landow's refusal to accept every reasonable offer Signature made to address Landow's purported concerns.  *See id.* at 54-55.

From the outset, Signature did everything it could to avoid litigation.  Signature brought suit in this Court after nearly two years of cease and desist demands went ignored by Landow, after incurring time, expense and frustration at a formal mediation process required under the contract documents that Landow abandoned, and even after attempting to purchase the Dulles Jet Center from Landow.  *See id.* at 46-47.  Landow was determined that it was going to do whatever it wanted at Dulles even though it knew its conduct was improper, until someone stopped it.  *See* Mem. Op. at 49; [PTE 213].  Signature did.

2

Within three weeks of Dulles Jet Center's grand opening, in late 2006, Landow demanded mediation against Signature for ultimately disproven allegations that Signature was not complying with the terms of the Ground Sublease Agreement between the parties ("GSA"). *Id.* at 11.  Signature then cross-demanded mediation in an attempt to stop Landow from improperly soliciting and servicing the transient market at Dulles. [PTE 71].  The demand letters and initiation of mediation marked the beginning of the enforcement process established in the GSA. *See* GSA Article 22 (requiring parties to negotiate in good faith and then mediate issues before commencing litigation).  It was at that time that Signature placed the contract documents in the hands of counsel for enforcement. *See* Declaration of Louis E. Dolan, Jr. ("Dolan Decl.") attached hereto at Exhibit "A" at ¶¶ 3-4.  Landow, for its part, retained attorneys from Press, Potter & Dozier, LLC, in Bethesda, Maryland, for these enforcement activities. *Id.* at ¶ 4.

When mediation and negotiations failed, Landow petitioned MWAA to eliminate Signature's exclusive fueling rights at DJC. [PTE 162].  Landow alleged that Signature was providing substandard fuel service, and asked MWAA to intervene pursuant to 4.2(a) of the GSA.  Signature responded in detail.  MWAA not only agreed with Signature as to fueling rights, but also told Landow that it was not supposed to be servicing transients, as Signature had told Landow for years. Mem. Op. at 14, 46.  Although Landow said it would abide by MWAA's letter ruling, it did not. Mem. Op. at 14; [PTE 192].

On September 15, 2008, Signature filed its Complaint, requesting a declaratory judgment, permanent injunction, an accounting and disgorgement, breach of contract and intentional interference with contract. *See* Complaint [Dkt. No. 1].  Landow elected to retain dedicated litigation counsel, Allen Farber, Esq.[1] of Drinker Biddle & Reath. In its Answer and

---

[1]    Although Mr. Farber is not admitted to practice in Virginia, he was admitted pro-hac vice
*(Footnote continued on next page)*

Counterclaim, Landow asserted the same allegations it had submitted in mediation and to MWAA: that Signature allegedly failed to provide adequate fuel service; improperly located and maintained a "taxilane" across Signature's ramp; improperly encroached on Dulles Jet Center's ramp without prior approval; and breached its contract by failing to share certain fuel revenues. *See* Answer and Counterclaim [Dkt. No. 10]. Signature then moved for a preliminary injunction, which was denied. *See* [Dkt. Nos. 27-28, 58].

Thereafter, a short but contentious discovery period ensued. In all, four motions to compel were filed and opposed. *See* [Dkt. Nos. 64, 68, 84, 93]. Landow propounded interrogatories and document requests, and then supplemented both, to which Signature was required to respond. Signature produced 43,400 pages of documents after initially reviewing many more for responsiveness and privilege. Landow produced, and Signature reviewed, 113,634 pages of documents, and approximately 7,000 native Excel spreadsheets. Signature took nine depositions and defended ten depositions, including a Fed. R. Civ. P. 30(b)(6) deposition which, due to the broad categories propounded by Landow, required the presence of five Signature representatives. While Signature sought to control costs by refraining from videotaping all but one of its depositions, Landow videotaped all of its depositions. Each party designated expert witnesses and then moved to strike the other party's experts. *See* [Dkt. Nos. 76, 128].

Landow moved to dismiss the tortious interference count in Signature's Amended Complaint, but failed. *See* [Dkt. Nos. 40 (Motion) 55 (Order)]. Landow then amended its counterclaims, alleging that Signature was not abiding by contractual timeframes for approving

---

*(Footnote continued from previous page)*
and was accompanied at all motions hearings and trial by an associate from his firm who is admitted to practice in Virginia. Mr. Dolan, who is admitted in Virginia, did not need to be accompanied by local counsel at every hearing.

hangar permits for certain of Dulles Jet Center's tenants and had acted in bad faith in disapproving such permits without providing its reasoning.  *See* [Dkt. No. 92 at 13-19].  Both parties moved for partial summary judgment, Signature to deny that it owed Landow additional fuel revenue sharing proceeds, while Landow successfully removed Signature's tortious interference claim from consideration at trial.  *See* [Dkt. Nos. 113, 139 (Motions) 180 (Order granting Landow's Motion)].  With trial nearing, Signature sought to narrow the issues by moving to exclude parol evidence on the formation of the contracts at issue.  [Dkt. No.  188].

The apex of Signature's counsels' efforts to enforce Signature's contract rights took the form of a hard-fought 8-day bench trial described by the Court as "extraordinary" in length. Mem. Op. at 2 n. 2.  The trial, which originally began in June 2009, was spread out over a period of weeks, ending in September 2009, due to failed settlement negotiations between the parties and conflicts in the Court's schedule.   Both before and after trial, the parties submitted comprehensive proposed findings of fact and conclusions of law.  The Court, in a sixty-six page Memorandum Opinion and related Order, granted Signature all of the declaratory and injunctive relief requested, but did not award monetary damages.  *See* Mem. Op.; March 17, 2010 Order [Dkt. No. 273].  Signature also prevailed in defeating each and every Landow counterclaim presented at trial.  *Id.*

Accordingly, Signature has protected its contract and property rights, preserved its longstanding relationship with MWAA, prevented the dilution of the Airport's (and its) FBO concessions when they next come up for bid, prevented further depletion of revenue from transient aircraft services owed to Signature and the Airport, and protected itself and MWAA from Dulles Jet Center's improper, illicit, conduct, all for the remaining term of Landow's sublease – 26 years.  *See* GSA § 3.1; Mem. Op at 65.  Signature has won a substantial victory.

Left with no alternative but to file suit to protect and defend its rights, which Signature has done, Signature now comes before this Court to request its reasonable attorneys' fees, costs and expenses, to which the parties agreed it was entitled if it prevailed.

## ARGUMENT

Federal Rule of Civil Procedure 54(d)(2)(A) provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." An exception to the general rule that attorneys' fees must be proved at trial is where the contract at issue entitles the prevailing party to attorneys fees. *Kraft Foods of North America, Inc. v. Banner Engineering & Sales, Inc.*, 446 F. Supp. 2d 551, 578 (E.D. Va. 2006). In this action, both parties made it clear throughout the litigation, at the final pre-trial conference, and during trial, that the prevailing party would seek an award of fees and costs, and were instructed by the Court that the issue would be taken up on a post-trial basis after the judgment of the Court was rendered.

Section 19.1(n) of the GSA mandates that the non-prevailing party pay the substantially prevailing party's attorneys fees and related expenses:

> Attorney's Fees and Costs.  In the event that either party defaults in the performance of any of the terms and provisions hereof and either party places the enforcement of this Sublease Agreement in the hands of an attorney and subsequently substantially prevails in any ensuing litigation, the non-prevailing party agrees to reimburse the prevailing party for all reasonable expenses incurred as a result thereof including, but not limited to, reasonable attorneys' fees and costs. *See* GSA § 19.1(n) [PTE 7].

The plain language of this section includes Signature's reasonable attorneys' fees, costs, and other expenses from the time it placed the "enforcement of [the GSA] into the hands of an attorney." Signature did so in late 2006, when it retained Nixon Peabody. *See* GSA Art. 22 (requiring negotiation and mediation before a civil action); Dolan Decl. at ¶¶ 3-4.

Landow is bound by the contract it signed.  *Lerner v. Gudelsky Co.*, 230 Va. 124, 131, 334 S.E.2d 579, 584 (1985) ("The court will not write a new contract for the parties. . .").  In its March 17, 2010 Order, this Court determined that Signature "substantially prevailed in this litigation" and ordered Signature, pursuant to Section 19.1(n) of the GSA, to submit a petition for reasonable attorneys' fees and costs.  [Dkt. No. 273 at 3].  Therefore, Signature is entitled to recover "all reasonable expenses," including attorneys' fees and costs, incurred in the enforcement of Signature's rights from late 2006 through the filing of this petition.[2]

Enforcement of Signature's rights under the GSA, within the meaning of Section 19.1(n), includes, among other things, the following:

    (a)  Time spent drafting demand letters;

    (b)  Time spent preparing for and attending mediation;

    (c)  Time spent investigating and responding to Landow's complaints to MWAA regarding Signature's fuel service and the rights and obligations of Signature and Landow under the GSA, Supplemental Agreement and Concession Contract;

    (d)  Time spent researching claims, interviewing witnesses, and evaluating relevant facts prior to filing suit in this Court;

    (e)  Time spent preparing pleadings, exhibits and associated documents for filing in this Court;

    (f)  Oral argument on motions, and preparation time;

    (g)  Time spent researching, drafting and filing motions and exhibits in this Court;

    (h)  Time spent drafting and responding to discovery requests;

    (i)  Time spent reviewing documents for production and documents that Landow provided in response to discovery requests;

    (j)  Time spent preparing for and taking or defending depositions;

    (k)  Time spent on trial preparation;

---

[2]  Contractual provisions shifting attorneys fees are valid under Virginia law.  *Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 449, 403, S.E.2d 334, 335 (1991).

(l)  Time spent at trial;

(m) Preparing findings of facts and conclusions of law; and

(n)  Associated expenses incurred in pursuing this litigation.

## I.      SIGNATURE IS ENTITLED TO REASONABLE ATTORNEYS' FEES UNDER THE *JOHNSON* FACTORS.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994).  Courts often refer to that figure as the "lodestar" amount.  *See Daly v. Hill*, 790 F.2d 1071, 1076 n.2 (4th Cir. 1986).  The party seeking attorneys' fees bears the burden of "establish[ing] the reasonableness of a requested rate."  *Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990).

In assessing the reasonable hourly rate and the number of hours reasonably spent by the prevailing attorneys, the Fourth Circuit applies the factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  However, there is no strict manner in which these factors are to be considered and applied.  *See E.E.O.C. v. Service News Co.*, 898 F.2d 958, 965 (4th Cir. 1990); *Superior Form Builders v. Dan Chase Taxidermy Supply Co., Inc.*, 881 F.Supp. 1021, 1026 (E.D. Va. 1994), *aff'd*, 74 F.3d 488 (4th Cir. 1996).  The *Johnson* factors are as follows:

1.      the time and labor required;

2.      the novelty and difficulty of the questions;

3.      the skill requisite to perform the legal service properly;

4.      the preclusion of other employment by the attorney due to the acceptance of the case;

5.      the customary fee;

8

6.   whether the fee is fixed or contingent;

7.   time limitations imposed by the client or the circumstances;

8.   the amount involved and the results obtained;

9.   the experience, reputation, and ability of the attorneys;

10.  the "undesirability" of the case;

11.  the nature and length of the professional relationship with the client; and

12.  awards in similar cases.

*Johnson*, 488 F.2d at 717-19.[3]  *See also Dennis v. Columbia Colleton Med. Ctr.*, 290 F.3d 639,

652 (4th Cir. 2002) (stating that the 4th Circuit applies the *Johnson* factors); *Corinthian*

*Mortgage Corp. v. Choicepoint Precision Marketing, LLC*, 1:07cv832 (JCC), 2009 U.S. Dist.

LEXIS 723, *7 (E.D. Va. January 5, 2009) (Cacheris, J.) (applying same 12 factor test).  Factors

1-3, 5, 7-9 of the *Johnson* test are relevant in this case.

A.   **Signature's Request For Attorneys' Fees Is Proportional to The Reasonable Amount of Time and Labor Spent Litigating the Issues in this Case. (*Johnson* Factor #1)**

1.   **The Issues In This Case Were Heavily Litigated**

The time expended by Signature's counsel in enforcing and defending Signature's

interests, and for which Signature seeks reimbursement, was reasonable considering the subject

matter of this litigation, the necessary work that was performed, and Landow's litigation tactics.

---

[3]   This Court has specifically applied the Johnson factors to determine the reasonableness of attorneys' fees arising out of a contractual dispute.  *Corinthian Mortgage Corp. v. Choicepoint Precision Marketing, LLC*, 1:07cv832 (JCC), 2009 U.S. Dist. LEXIS 723, *7 (E.D. Va. January 5, 2009) (Cacheris, J.).  But at least one District court within the Fourth Circuit has applied state law to address the reasonableness of attorneys' fees in a contractual dispute.  *See Double K. Properties, LLC v. Aaron Rents, Inc.*, No. 1:03cv00044, 2003 U.S. Dist. LEXIS 20441, *7 (W.D. Va. November 13, 2003).  The analysis under Virginia law, however, is essentially the same as that used under *Johnson*.  *See id.*

*See* Declaration of Robert A. Angle, Esq. ("Angle Decl.") at ¶¶ 9, 15-16, 37, attached hereto as Exhibit "B."  As the Court is surely aware, this case was an important contractual dispute that will affect the rights of Signature, Landow, and MWAA for the remaining 26 years of Landow's sublease.  The case was therefore highly contested, and it involved a heavy motions practice. This was partly due to Landow's trial strategies.  For example, Landow supplemented its discovery requests to seek personnel files -- apparently hoping to prove that Signature's personnel had been demoted or fired as a result of something having to do with Landow. Landow then moved to compel.  *See* [Dkt. Nos. 93-94].  The performance of Signature's employees was never an issue in the case, and Landow confirmed this when it did not designate any portion of the personnel files as exhibits or use any of the personnel files at trial.  Similarly, at trial, Landow sought to introduce a spreadsheet exhibit that purported to show that Signature was slow to fuel aircraft on Landow's ramp.  As Landow's witness testified that, under the direction of Nathan Landow, she had removed up to 35% of the data which reflected quick fueling times from the spreadsheet, Signature was forced to move to exclude the exhibit on grounds that it was untrustworthy and prepared for use in litigation.  *See* Plaintiff's Memorandum of Law Regarding the Inadmissibility of Defendant's Trial Exhibit No. 114 [Dkt. Nos. 240, 244].  Signature succeeded.

Many of the motions or oppositions filed by Signature required a significant amount of time to research, draft, file, and present to the Court through oral argument.  These motions and oppositions included:

> a.   Plaintiff's Motion For Preliminary Injunction (and Reply) [Dkt. Nos. 27-28,38];
>
> b.   Plaintiff's Opposition to Defendant's Motion to Strike the Declarations of John G. Farmer and Michael Bennett.  [Dkt. No. 45];

c.      Opposition of Plaintiff Signature Flight Support Corporation to
        Defendants Landow Aviation Limited Partnership's Motion to
        Compel Discovery.  [Dkt. No. 67];

d.      Plaintiff Signature Flight Support Corporation's Motion to Compel
        the Production of Documents.  [Dkt. No. 68-69];

e.      Plaintiff's Opposition to Defendant's Motion for Leave to File an
        Amended Counterclaim.  [Dkt. No. 79];

f.      Plaintiff Signature Flight Support Corporation's Motion to Compel
        the Production of Documents.  [Dkt. Nos. 84-85];

g.      Opposition of Plaintiff Signature Flight Support Corporation to
        Motion to Compel of Landow Aviation Limited Partnership.  [Dkt.
        No. 100];

h.      Motion of Plaintiff Signature Flight Support Corporation to Strike
        the Designation of Eric T. Smith as an Expert Witness and
        Preclude Testimony (and reply)  [Dkt. Nos. 121-22, 125];

i.      Plaintiff Signature Flight Support Corporation's Motion in Limine
        to Strike the Designation of Richard Ryan as an Expert Witness
        and Preclude Testimony (and reply).  [Dkt. Nos. 142-43, 153];

j.      Motion for Partial Summary Judgment of Plaintiff Signature Flight
        Support Corporation as to Count II of the Amended Counterclaim
        (and reply).  [Dkt. Nos. 139-140, 164)];

k.      Plaintiff's Motion in Limine to Exclude Certain Proposed Trial
        Exhibits and Testimony of Certain Witnesses Not Timely
        Disclosed (and reply).  [Dkt. Nos. 165-66, 175];

l.      Motion to Exclude Parol Evidence and Narrow the Issues for Trial.
        [Dkt. Nos. 188-89];

m.      Plaintiff Signature Flight Support Corporation's Opposition to
        Landow Aviation Limited Partnership's Motion in Limine to
        Exclude the Summary of the Deposition of Christopher U.
        Browne.  [Dkt. No. 220];

n.      Plaintiff Signature Flight Support Corporation's Opposition to
        Landow Aviation Limited Partnership's Motion Requesting
        Rulings on Landow's Pending Objections to Deposition
        Summaries and Designations.  [Dkt. No. 221].

While Signature did not prevail on all of these motions, several of them set forth the theme and theory of Signature's case, and were important building blocks needed by Signature to ultimately prevail.

For example, Signature's motion for a preliminary injunction set forth its interpretation of the interplay among the contract documents and highlighted the importance of various sections of those contracts.  This motion was successful in that the Court determined that Signature had established a likelihood of success on the merits by virtue of the motion, *See* January 14, 2009 Memorandum Opinion at 24 [Dkt. No. 57], and in that the Court ultimately agreed with Signature's contractual interpretation set forth therein.  The Court did not change its view of the correctness of Signature's contract interpretation.  *See* Mem. Op. at 16-33.  Similarly, Signature's motions to strike Landow's experts, Richard Ryan and Eric Smith, Esq., created efficiencies in Signature's preparation of voir dire and cross examination at trial.

When determining appropriate attorneys' fees, courts consider the overall success and overall reasonableness of tactics, rather than evaluating the success of each individual litigation decision or motion made by the prevailing party.  *See County Sch. Bd. of York Co. v. A.L.,* No. 4:03cv174, 2007 U.S. Dist. LEXIS 16395, *37-38 (E.D. Va. March 6, 2007) ("While the Court must consider the overall result of the litigation in terms of the moving party's success, no authority exists which persuades the Court to reduce the fee award for reasonable, but unsuccessful tactics within the litigation.  The Court's inquiry is simply whether the time was reasonably expended.").  Signature's motions and other efforts were reasonable, and no downward adjustment of the loadstar rate is necessary.  *See* Angle Decl. at ¶ 9.

In an effort to be reasonable in its request for attorneys' fees, Signature has specifically excluded from it request much of the work related to several other motions, on which Signature

was unsuccessful, or which ultimately proved unnecessary.  Signature eliminated these fees from

this petition by removing attorney time that, through invoice records, was easily identified as

related to the following motions and pleadings:

    a.     Plaintiff's Opposition to Defendant's Motion to Dismiss Count III of the Complaint.  [Dkt. No. 14];

    b.     Plaintiff's Opposition to Defendant's Motion to Dismiss Count III of the Amended Complaint.  [Dkt. No. 47];

    c.     Opposition of Plaintiff Signature Flight Support Corporation to Defendant Landow Aviation Limited Partnership's Motion to Strike Designation of Expert Witness (Michael Hodges).  [Dkt. No. 80];

    d.     Opposition of Plaintiff/Counterclaim Defendant Signature Flight Support Corporation to Motion for Summary Judgment on Count III of the Amended Complaint.  [Dkt. No. 117];

    e.     Signature Flight Support Corporation's Opposition to Defendant's Motion in Limine to Exclude the Report and Testimony of Plaintiff's Proposed Expert Michael A. Hodges, on the Subject of Damages.  [Dkt. No. 145];

    f.     Plaintiff Signature Flight Support Corporation's Motion to Reconsider and Vacate the Court's June 16, 2009 Trial Ruling Sustaining Landow's Objection to Signature's Anticipated Damages Testimony.  [Dkt. No. 203].

    2.    **Discovery in this Case Necessarily Required Significant Attorney Time**

In addition to a substantial motions practice, Signature was also required to spend a

significant amount of attorney and other professional time on discovery.  In response to

Landow's document requests, Signature was required to collect potentially relevant documents

within Signature's custody or control as well as within the control of Signature's parent

company.  This task was time intensive, as Signature operates approximately 50 FBOs within the

United States and its parent Company, BBA Aviation, is headquartered in London.  This

required Signature to retain an outside vendor to extract documents from relevant custodians, as agreed to by the parties.  In all, Signature produced a focused 43,400 pages of documents after collecting, and reviewing for relevance, responsiveness and privilege, many more documents. *See* Dolan Decl. at ¶ 15(a).

Additionally, Signature was required to review the 113,634 pages of electronic documents, and approximately 7,000 additional native excel spreadsheets produced by Landow. *See id.* at ¶ 15(d).  That number does not include hundreds of pages of additional documents reviewed by Landow's expert witness, Eric Smith, that counsel for Landow provided to Signature only on the eve of Mr. Smith's deposition.  *See id.* at ¶ 15(e).  Signature also issued a subpoena on MWAA, which resulted in additional documents for Signature to review, several of which were used at trial as exhibits.  *See id.* at ¶ 15(c).

As a result of Landow noticing four Signature officers and employees for deposition, Signature was required to undertake substantial pre-deposition preparation, including familiarizing the deponents with relevant documents.  *See id.* at ¶ 16.  Additionally, as a result of Landow's broad 30(b)(6) deposition notice, Signature, in a good faith effort to provide witnesses with the necessary information, made five corporate representatives available to Landow for interrogation.  *See id.*  Each of those witnesses required preparation time.

In addition to the foregoing, the Court required Signature and Landow to engage in mediation.  This required briefing of the issues and attendance at the mediation before the Honorable Thomas Rawles Jones.  Moreover, Signature had to comply with the usual demands of litigating in the Eastern District of Virginia, which included the preparation of exhibit and witness lists, oppositions thereto, and filing proposed findings of fact and conclusions of law.  Lastly, the trial spanned a several month period of time.  This necessarily required additional

14

preparation for Signature, and presumably Landow, to effectively and adequately represent the interests of their clients.

### 3.   Signature's Main Litigation Team Was Leanly Staffed

Signature's main litigation team consisted of one partner, one associate and one paralegal.  Landow was apparently staffed with one senior partner, one mid-level associate and one junior associate.  Landow also used an outside vendor from Boston to operate its electronic trial evidence, which Signature did not.  Signature's lean staffing in this case reduced the amount of duplicative billed hours.  Angle Decl. at ¶ 16.  Additionally, Signature has removed $205,102.50 from its fee requests to account for fees that were duplicative, or stemmed from unsuccessful motions or claims, or issues not advanced at trial.  Dolan Decl. at ¶ 19, and Exhibit "7" thereto.  Thus, the lodestar figures requested by Signature are reasonable, properly calculated, and do not require further adjustment or deductions.

### B.   This Case Entailed Difficult and Complex Legal Issues (*Johnson* Factor #2)

This litigation revolved around the legal interpretation of three highly intertwined, complex, contracts: the Concession Contract, the Ground Sublease Agreement and the Supplemental Agreement.  [PTE 1, 7, 9].  Several of the issues in the litigation were elucidated by expert testimony. For example the role of a fixed base operator at large, international airport, and the timeframe within which a general aviation pilot expects an FBO to complete a fuel transaction. These were not Signature's issues; they were Landow's, to which Signature was required to respond.  The complexity of this case is further evidenced by the Court's March 17, 2010 Opinion, which exceeded 60 pages in length, described the bench trial "extraordinary [in] length," and noted the large volume of trial exhibits in the record.  Mem. Op. at 2 n. 1.  Signature introduced 127 trial exhibits.  Landow introduced 78 exhibits, including many drafts of the

complex agreements and many other contracts. This plainly required significant time for counsel to prepare and familiarize themselves with.

Moreover, this was not a case where there was one provision, or even one right or obligation, in dispute. Signature had two contractual disputes with Landow - the improper solicitation and servicing of the general transient market at Dulles and Landow improperly denying Signature access to its ramp. Signature prevailed on both. Landow, however, had multiple counterclaims addressing issues initially raised at mediation, and which were ultimately disposed of by the Court in a manner adverse to Landow.

Landow, by its own actions, has acknowledged the complexity and importance of the matters at issue in this case. From the time Landow demanded mediation, in December 2006, through Signature's filing of the Complaint in the instant action, Landow armed itself with three members of Press, Potter & Dozier, LLC, including founding member Fredric A. Press and name member Susan P. Potter. In contrast, during this time, Signature was represented by Louis E. Dolan, Jr., a partner in Nixon Peabody LLP's Washington office. Once Signature filed its Complaint in this matter, Landow retained the services of Allen V. Farber, a seasoned trial lawyer and partner at Drinker Biddle & Reath LLP, a prestigious national firm with over 680 attorneys in 12 cities and a large Washington, D.C. office. Dolan Decl. at ¶ 5; Angle Decl. at ¶ 18. In so choosing its counsel, Landow presumably recognized the difficulty and importance of the issues in this dispute. Moreover, through its choice of counsel, Landow implicitly acknowledged that, due to the difficulty of the issues and the importance of the rights at stake, it was reasonable to retain, and incur the fees of, attorneys from large, Washington D.C. law firms, such as Drinker Biddle & Reath LLP and Nixon Peabody LLP. The rough parity between

counsel is itself indicative that Landow considers Signature's rates reasonable.  Angle Decl. at ¶ 24.

C.  **Signature's Experienced and Reputable Legal Team Possessed the Requisite Skill to Properly Perform the Required Legal Services (*Johnson* Factors #3 and #9)**

This case required experience in civil procedure, trial practice skills, and familiarity with federal court practice, as well as practice before the United States District Court for the Eastern District of Virginia.  Angle Decl. at ¶ 18.  As shown in the attached biographical information, Louis E. Dolan, Jr., lead counsel for Signature, is an experienced commercial real estate litigator with the knowledge necessary to litigate a case of this nature.  Dolan Decl. at ¶ 10, and Exhibit "2" thereto; Angle Decl. at ¶¶ 19-21;.  Aside from the legal complexity of this case, as discussed in Section "B", *supra*, lead counsel for Landow, Allan Farber, added to the difficulty of obtaining a favorable outcome in this case.  Mr. Farber, as evidenced by the attached biographical information, is a seasoned trial lawyer.  *See* Biography of Allen V. Farber, attached hereto as Exhibit "C."  During the pre-trial and trial phases of this litigation, it was clear that Mr. Farber drew from his extensive litigation background, both in his trial objections, procedural posturing, and overall litigation strategy.  In short, this was a very contentious litigation, hard-fought on both sides by worthy attorneys.  Signature's attorneys litigated this action as efficiently as they could, given the amount of discovery and motions practice created by the nature of this case and opposing counsel.   Angle Decl. at ¶¶ 15-16.

D.  **Customary Fees (*Johnson* Factor #5)**

To evaluate the reasonableness of the hourly rates of Signature's counsel and legal assistants, the Court must determine whether the requested rates are consistent within the prevailing market rate in the relevant community.  *See Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir.

1990) (calculating attorney's fee award under 42 U.S.C. § 1988).  This determination is fact intensive and is "best guided by what attorneys earn from paying clients for similar services in similar circumstances."  *Rum Creek*, 31 F.3d at 175.

Here, Signature seeks compensation for its counsel in the range of $270 plus per hour for associates to a maximum of $605 per hour for partners and between $135 and $185 per hour for legal assistants.  *See* Dolan Decl. at ¶ 9, and Exhibit. "1" thereto.  The Dolan Declaration establishes that the hourly rates charged by the partners, associates and other legal assistants who worked on this matter are reasonable and customary rates for persons of their respective experience.  Dolan Decl. at ¶¶ 9, 12.  The Angle Declaration demonstrates that: a) the relevant "community" is that group of attorneys who practice in the Commonwealth of Virginia, particularly in Northern Virginia, and Washington, D.C., in firms of similar size; and b) the hourly rates sought by Signature's attorneys and legal assistants are in line with the prevailing market rates for lawyers in the relevant community that practice before this Court.  Angle Decl. at ¶¶ 22-30.  Moreover, in an effort to assuage any concerns that this Court may have regarding the total amount Signature is seeking, Signature has voluntarily reduced its total request for attorneys' fees by five percent (5%).  Dolan Decl. at ¶¶ 19, 28.

Signature recognizes that, in determining reasonable hourly attorney compensation, this Court has applied the *Laffey Matrix* in past cases.  *Corinthian Mortgage Corp.*, 1:07cv832 (JCC), 2009 U.S. Dist. LEXIS 723, *10-13 (Cacheris, J.).  Signature respectfully submits that there are other, reliable, indicia of rates currently being applied in the Northern Virginia legal market that are more applicable, and that are more indicative than the *Laffey Matirx* of the current trends in the Northern Virginia legal marketplace for commercial litigation.  Angle Decl. at ¶¶ 23-30.  For example, a recent PriceWaterhouseCoopers survey of billing rates indicates that Northern

Virginia offices of comparable firms charge hourly billing rates of between $408 and $791 for partners, and between $255 and $516 for associates. Angle Decl. at ¶27. Signature submits that these rates are more indicative of the current market rates in Northern Virginia for complex, high-sakes litigation, than those set forth in *Laffey*. Angle Decl. at ¶¶ 26, 29, 37.

Considering the skill, experience and reputation of Signature's counsel, the customary fee, the amounts at issue and the results obtained, the Court should calculate the lodestar figures using the reasonable hourly rates requested by Signature. *Id.*

E.   **This Matter Was Litigated Under Significant Time Constraints (*Johnson* Factor # 7)**

As this Court is aware, litigation in the Eastern District of Virginia is conducted under demanding time constraints. Signature recognizes that the Court does not typically ascribe weight to this factor. *See Budd v. Gondles*, Nos. 88-0118-A; 88-0119-A; 88-0120-A, 1988 U.S. Dist. LEXIS 18387 *9 (E.D. Va. November 22, 1988) (Cacheris, J.) Here, though, the swift pace of the litigation was exacerbated by the motion-heavy nature of this case, as discussed in Section "A," *supra*. Accordingly, this factor should be taken into consideration when determining the reasonableness of the fees Signature has submitted. Angle Decl. at ¶ 31.

F.   **This Litigation Involved Extremely Valuable Property and Contract Rights, and Signature's Victory Will Affect Dulles Jet Center's Obligations Under the Ground Sublease Agreement for Decades (*Johnson* Factor #8)**

Signature initiated this lawsuit for a variety of important reasons. First, Signature sought to stop Landow from improperly competing for revenue from Signature's core customer base at Dulles, the general aviation transient market, and to prevent Landow from denying Signature access to its ramp for overflow parking. Second, Signature is largely responsible to MWAA for ensuring that Landow, its sublesee, complies with its obligations under the agreements. Under

Landow's reading of the contracts, it could operate a *de facto* FBO without having competed in the public procurement process, and derive revenue from servicing transient aircraft, without remitting to MWAA any of the concession fees that authorized FBOs at Dulles are required to remit.   Accordingly, Signature's relationship with MWAA is very important to Signature, and Signature protected that longstanding relationship from the harm that Landow was causing. Signature succeeded in obtaining the relief it most desired.

The value of this relief is immeasurable, as it protects Signature's valuable contract and property rights by restricting Landow from improperly luring Signature's transient customers, and therefore revenue, away to Dulles Jet Center.  *See Toy's "R" Us, Inc. v. Abir*, 97 Civ. 8673, 1999 U.S. Dist. LEXIS 1275, *10-11 (S.D. N.Y. February 10, 1999) (refusing to reduce the loadstar amount of an attorneys' fee award, the court stated "Moreover, the plaintiffs succeeded in obtaining the more important injunctive relief, and the withdrawn causes of action [which included a demand for damages] arose out of a common core of facts."); *Dunkin Donuts Inc. v. Mercantile Ventures, Inc.*, EP-91-CA-154, 1994 U.S. Dist. LEXIS 19753, *11-12 (W.D. Tx. August 11, 1994) ("The result obtained by DDI, *particularly the injunctive relief*, fully justified the attorneys' fees incurred.") (emphasis added).   In this regard, Signature's success has protected Signature and MWAA's rights at Dulles for the next 26 years.  *See* GSA § 3.1.  This increases the value of Signature's Concession Contract with MWAA and protects Signature from improper competition at Dulles.

To value Signature's success in purely monetary terms is difficult; however, David Landow, in a declaration submitted to this Court, valued Dulles Jet Center's transient revenue for 2008 alone at $999,429.  *See* Supplemental Declaration of David Landow at ¶ 36 [Dkt. No. 44-3]; Dulles Jet Center Operating Statements [PTE 203].  Over the next 26 years, that amounts to

approximately $26,000,000 worth of revenue that Signature may now compete for.  MWAA may be entitled to a portion of that revenue as well.  Mem. Op. at 5-6.  Signature was also successful in protecting its right to access Dulles Jet Center's ramp for overflow aircraft parking, which was one of the key reasons Signature agreed to the deal in the first place.  *See* March 17, 2010 Order at ¶¶ 3-4 [Dkt. No. 273].  Moreover, Signature prevailed on all of Landow's counterclaims. Two of these victories were particularly valuable to Signature, and stemmed from issues conjured up by Landow long before Signature filed its Complaint.

First, since before the opening of Dulles Jet Center, Landow had sought to procure its own fueling rights by showing that Signature, the exclusive fuel provider at Dulles Jet Center, was providing inadequate service.  For example, within weeks of Dulles Jet Center's grand opening, Landow demanded mediation pursuant to the terms of the GSA relating to fuel servicing.  *See* [PTE 241].  By 2008, this had culminated into an internal "Break Away From Signature Campaign," which included a direct petition to MWAA for intervention.  *See* Mem. Op. at 13-14 (describing Landow's "Break Away From Signature Campaign").  Even when MWAA intervened, Landow still would not rest, refusing to accept MWAA's determinations. Ultimately, the same issues were presented to this Court, in the form of Landow's declaratory judgment counterclaims.  *See* Answer and Counterclaim [Dkt. No. 10 at Counterclaim ¶¶ 29-35]. This required a vigorous defense from day one because the ability to sell fuel is one of the most lucrative rights a general aviation service provider, like Signature, can obtain.  (Trial Tr., Sep. 4, 2009 at 9:17-18); (Deposition of John G. Farmer, March 4, 2009 at 17:20-18:16 [DTE 132].) Signature put on such a defense, and succeeded entirely.  The Court saw Landow's efforts for what they were, a contrived effort to get a declaratory judgment that Signature was providing fuel in an unacceptable manner, which Landow could take back to MWAA and petition for its

own lucrative fueling rights. *See* March 17, 2010 Order at ¶ 5 [Dkt. No. 273]. Had Landow succeeded, either through its petitions to MWAA, or though the litigation pending before this Court, Signature's revenues could have suffered greatly.

Second, Landow fought the placement and width of a supposed "taxilane" to which it claimed access rights under of the GSA. As with fuel servicing, this issue surfaced in Landow's demand for mediation. Landow's requested relief could have greatly diminished the available space for aircraft parking on Signature's ramp permanently, since this claim related to a recorded easement. Due to the potential impact that a negative outcome on this issue would have for the profitability of Signature's Dulles FBO, this issue warranted a vigorous defense from day one. The Court's March 17, 2010 Order denied Landow all requested declaratory relief. *See* March 17, 2010 Order at ¶ 5 [Dkt. No. 273]. Signature also prevailed on Landow's claim that it improperly denied hangar permits, Mem. Op. at 61-64, and on Landow's other counterclaim for ramp encroachment. *Id.* at 60-61.

Signature's substantial success at trial in obtaining invaluable declaratory and injunctive relief, and staving off all of Landow's counterclaims, was tempered slightly by the requested relief that Signature was not awarded. Signature was denied breach of contract damages and an accounting and disgorgement. Signature first notes that the value of this relief is minimal in comparison to the declaratory and injunctive relief obtained. Signature brought this suit to protect future revenue streams at its Dulles FBO from Dulles Jet Center's improper competition. In that respect, Signature has succeeded. Signature unquestionably lost revenue from transient aircraft that Landow had improperly taken between the time that Dulles Jet Center opened for business, in October of 2006, through this Court's March 17, 2010 Order. That loss of revenue pales in comparison to the relief Signature obtained by this Court's order that Dulles Jet Center

cease and desist from soliciting or servicing the general aviation transient market for the remainder of its lease, which remains in effect for the next 26 years, however.

Signature's time spent on establishing that Landow was breaching its oblations under the GSA by soliciting and serving the transient general aviation market at Dulles was not in vain. Signature's breach of contract claim and its requests for injunctive and declaratory relief all involved a "common core of facts or . . . related legal theories" and do not require apportioning. *See Corinthian Mortgage Corp.*, 1:07cv832 (JCC), 2009 U.S. Dist. LEXIS 723, *19 (E.D. Va. January 5, 2009) (Cacheris, J.) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (internal quotations omitted). Signature was required to prove an underlying breach of obligations in order to prevail on its substantial declaratory and injunctive claims. Nor were the time and resources spent establishing that Signature was being damaged by Landow's conduct wasted. Signature established that it was being harmed by Landow's improper conduct. *See* Mem. Op. at 40, 43. Signature was required to show such harm in order to prevail in obtaining the valuable injunctive relief this Court granted. *See Christopher Phelps & Associates, LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (internal citation omitted) (requiring plaintiff to show "that it has suffered an irreparable injury" in order to obtain permanent injunctive relief); *See* Mem. Op. at 42-43 (stating that Signature established irreparable injury because Signature had lost, and would continue to lose, customers and goodwill due to Landow's improper actions).

Signature does note, however, that its efforts to prove damages *with a reasonable degree of certainty* were unsuccessful and, as such, did not substantially contribute to the success of the litigation. Accordingly, in an effort to present a reasonable request for attorneys fees and costs to the Court, Signature's counsel have eliminated attorneys fees and other expenditures associated

with the preparation of its designated expert witness, Michael A. Hodges, from this request as well as time associated with damages proof.  *See* Dolan Decl. at ¶ 18.[4]

In sum, the time expended by Signature's counsel at the rates charged was reasonable in relation to the success achieved, and signature should be reimbursed.  Angle Decl. at ¶¶ 15-16, 26, 29, 37.

## II.   SIGNATURE IS ENTITLED TO ITS REASONABLE COSTS INCURRED IN THIS LITIGATION

Under Section 19.1(n) of the GSA, Signature is entitled to "all reasonable expenses . . . including, but not limited to, reasonable attorneys' fees and costs" resulting from its disputes with Landow related to the parties' rights and obligations under the GSA.  There were two types of costs incurred in this enforcement action: those incurred by Nixon Peabody on Signature's behalf, and those incurred directly by Signature.

Signature requests an award of $81,765.37 for costs incurred by Nixon Peabody on Signature's behalf for, among other things, legal research, amounts paid to court reporters for hearings and trial transcripts, travel costs for its attorneys related to depositions taken in this case and client meetings, and for the costs of exhibits and copying.  Dolan Decl. at ¶¶ 20-21, and Exhibit "8" thereto.  These costs were reasonably incurred.  Angle Decl. at ¶¶ 36-37.

Signature directly incurred costs totaling $122,584.82.  Dolan Decl. at ¶ 22, and Exhibit "9" thereto.   Of this total, $14,262.50 was incurred for mediation services from Harold Himmelman, of Jams Endispute, in  connection with mediation in this matter, as required by the GSA.  *Id.* at ¶ 23, and Exhibit "9" thereto.  The total amount of costs incurred by Signature also

---

[4]   Signature does not seek reimbursement, pursuant to Fed. R. Civ. P. 26(b)(4)(C)(i) for time Michael Hodges spent in deposition at Landow's request.  Signature does, however, seek reimbursement, pursuant to Fed. R. Civ. P. 26(b)(4)(C)(i) for time its other expert witness, Robert Showalter, spent in deposition at Landow's request.

includes $48,073.44 in costs from Guidance Software, related to the extraction and compiling of data from various signature computer servers. *Id.* at ¶ 24, and Exhibit "9" thereto. Moreover, Signature incurred $27,253.45 in expert witness fees and associated costs from its rebuttal expert, Robert Showalter. *Id.* at ¶ 25, and Exhibit "9" thereto. Lastly, Signature incurred costs and expenses in the amount of $32,995.43 for, among other things, necessary travel expenses related to mediation, trial preparation, and attendance at trial in this matter. *Id.* at ¶ 26, and Exhibit "9" thereto.

The aforementioned expenses were necessarily increased by the length of trial, the number of depositions, and the requirement for principals of Signature to be present at Court-ordered mediation. *Id.* at ¶ 27. Each of these expenses was necessary to Signature's claims and defenses in this matter, and reflects the costs actually incurred by Signature. *See* Angle Decl. at ¶ 36; Dolan Decl. at ¶¶ 20-27. Given the results obtained by Signature, particularly in light of the complex legal and factual issues presented in this case, and the number of claims and counterclaims, these costs and expenses were reasonable and necessary to Signature's claims and defenses in this matter. *See* Angle Decl. at ¶ 36. Accordingly, the Court should award Signature $204,350.19 for the actual costs and expenses it incurred in this matter directly and through Nixon Peabody.

## CONCLUSION

Signature is the substantially prevailing party in this matter.  As such, it is entitled to reasonable expenses, including attorneys' fees and costs, expended in enforcing and litigating its rights.  As explained above, Signature's request attorneys' and other professional fees totaling $1,570,616 and costs and expenses totaling $204,350.19 is reasonable under the factors and guidelines applied by this Court.  *See* Angle Decl. at ¶ 37.  Accordingly Signature respectfully requests that this Court grant its Motion for Attorneys' Fees and Related Costs and enter an Order awarding Signature attorney and other fees totaling $1,570,616, costs and expenses totaling $204,350.19, and interest thereon from the date of entry of judgment.

Dated:  April 1, 2010

Respectfully submitted,

**Nixon Peabody LLP**

_____/s/_____
Louis E. Dolan, Jr. (VSB No. 34437)
Vernon W. Johnson, III (VSB No. 30354)
401 9th Street, N.W., Suite 900
Washington, DC 20004-2128
(202) 585-8000
(202) 585-8080 (facsimile)
ldolan@nixonpeabody.com
vjohnson@nixonpeabody.com

*Attorneys for Plaintiff/Counter Defendant*
*Signature Flight Support Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of April 2010, I electronically filed the foregoing Motion For Attorneys' Fees and Related Costs of Signature Flight Support Corporation, Memorandum of Points and Authorities in Support thereof, and Declarations of Louis E. Dolan, Jr., Esq. and Robert A. Angle, Esq. in support thereof, with accompanying exhibits, with the Clerk of Court using the CM/ECF system.  Additionally, as Exhibits 1,6,7,8 and 9 to Louis E. Dolan, Jr.'s Declaration are filed under seal, I caused these documents to be hand delivered to the Clerk of the Court and the following:

Allen V. Farber, Esq.
John D. V. Ferman, Esq.
Drinker Biddle
1500 K Street, N.W.
Washington, D.C.  20005-1209
(202) 354-1382
(202) 842-8465 (facsimile)
John.Ferman@dbr.com
Allen.Farber@dbr.com


                              /s/
                    _____
                    Louis E. Dolan, Jr. (VSB No. 34437)
                    Nixon Peabody LLP
                    401 9th Street, N.W., Suite 900
                    Washington, DC 20004-2128
                    (202) 585-8000
                    (202) 585-8080 (facsimile)
                    ldolan@nixonpeabody.com

                    *Attorneys for Plaintiff/Counterclaim
                    Defendant Signature Flight Support
                    Corporation*

1