IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

SIGNATURE FLIGHT SUPPORT      )
CORPORATION,                  )
                              )
        Plaintiff,            )
                              )
                              )
        v.                    )     1:08cv955 (JCC/TRJ)
                              )
                              )
LANDOW AVIATION LIMITED       )
PARTNERSHIP,                  )
                              )
        Defendant.            )

# M E M O R A N D U M   O P I N I O N

This matter is before the Court on Plaintiff Signature Flight Support Corporation's ("Signature" or "Plaintiff") Motion for Attorneys' Fees and Related Costs.  Also before the Court is Signature's Bill of Costs.  For the following reasons, the Court will grant in part and deny in part Plaintiff's Motion for Attorneys' Fees and Related Costs and will grant Signature's request in its Bill of Costs.

## I. Background

On September 15, 2008, Plaintiff filed a Complaint against Defendant Landow Aviation Limited Partnership ("Defendant" or "Landow") alleging five counts: Count I for Declaratory Judgment, Count II for Breach of Contract, Count III for Intentional Interference with Contract, Count IV for

1

Accounting and Disgorgement, and Count V for Permanent Injunctive Relief.  [Dkt. 1.]  These claims were based on Plaintiff's allegations that, since the opening of the Dulles Jet Center ("DJC") at Washington Dulles International Airport ("Dulles") in 2006, Defendant has improperly expanded the scope of its services, held itself out as a Fixed Base Operator ("FBO"), provided FBO services, and invaded the business that Plaintiff and the Metropolitan Washington Airports Authority ("MWAA") have reserved to Plaintiff.  *Id.*

On October 17, 2008, Defendant filed a Motion to Dismiss Count III.  [Dkt. 11.]  The Court granted this motion on November 17, 2008.  [Dkt. 24.]  Plaintiff filed an Amended Complaint restating Counts I, II, IV, and V, and added a new Count III for Intentional Interference with Prospective Business or Economic Advantage on December 2, 2008.  [Dkt. 30.]  Defendant again moved to dismiss Count III [Dkt. 40] and the Court denied this request on January 13, 2009.  [Dkt. 56.]  On April 13, 2009, Defendant next moved for summary judgment in its favor on Count III [Dkt. 113] and the Court granted the motion on June 12, 2009. [Dkt. 180.]

Also on October 17, 2008, Landow counterclaimed against Signature.  [Dkt. 10.]  Landow filed the Amended Counterclaim on March 13, 2009.  [Dkt. 92.]  Count I of an Amended Counterclaim requests a declaratory judgment (1) recognizing limits on the

rights of Signature's customers to enter the DJC, (2) requiring
Signature to relocate the taxilane centerline on its ramp and to
expand this same taxilane, (3) requiring Signature to provide
fuel service that complies with the Ground Sublease Agreement
("GSA") and Signature's internal manual, and (5) requiring
Signature to issue invoices and receipts for fuel payments within
ten minutes of completing fueling at the DJC.  *Id.*  Count II
alleges a breach of contract based on Signature's alleged failure
to share its fuel revenues with Landow as provided in the GSA.
*Id.*  Count III requests a judgment declaring that (1) Signature
breached the GSA by failing to properly approve or deny certain
sublease permits, and (2) Signature has approved these permits.
*Id.*  On May 21, 2009, Signature moved for partial summary
judgment on Count II of Landow's Amended Counterclaim.  [Dkt.
139.]  On July 22, 2009, the parties filed a Stipulation of
Dismissal of Count II of the Amended Counterclaim with Prejudice.
[Dkt. 202.]

    On June 16, 2010, the bench trial in this case started
but was stayed at the parties' suggestion that they would attempt
to settle the case.  [Dkt. 198.]  When the parties failed to
reach a settlement, the bench trial resumed on August 31, 2009
and ended on September 16, 2009.[1]  Before the Court on a bench

---

    [1] Due to the conflicts with the Court's schedule, the trial did not take
place from September 5, 2009 through September 14, 2009.

3

trial was Plaintiff's claim of, Declaratory Judgment (Count I), Breach of Contract (Count II), Accounting and Disgorgement (Count IV), and Permanent Injunction (Count V). Also before the Court were Defendant's Amended Counterclaim for Declaratory Judgment (Counts I and III) regarding, *inter alia*, fuel service standard, location of the taxilane centerline, and permit issues.

Following the bench trial, the Court issued a Memorandum Opinion and an Order on March 17, 2010, finding in favor of Defendant as to Plaintiff's claim of Breach of Contract (Count II) and Plaintiff's request for Accounting and Disgorgement (Count IV). [Dkts. 272, 273.] Specifically, while the Court held that Defendant breached the contract at issue, the Court ultimately found in favor of Defendant as to the breach of contract claim based on Plaintiff's failure "to prove the damage prong of its . . . claim." [Dkt. 272 at 40.] With respect to Plaintiff's request for Declaratory Judgment (Count I), Permanent Injunction (Count V), as well as all Landow's claims of Declaratory Judgment (Amended Counterclaim Counts I and III) regarding fuel service quality, taxilane, and permits, the Court found in favor of Signature. *Id.*

On April 1, 2010, Plaintiff filed a Motion for Attorneys' Fees and Related Costs pursuant to Federal Rule of Civil Procedure 54(d)(2)(A) and this Court's March 17, 2010 Order. [Dkt. 275.] Defendant opposed the Motion on May 17, 2010

4

[Dkt. 288] and Plaintiff filed its reply to Defendant's Opposition on May 24, 2010.  [Dkt. 289.]  Plaintiff also filed its Bill of Costs on March 29, 2010 [Dkt. 274] which was opposed by Defendant on April 6, 2010.  [Dkt. 279.]  Plaintiff filed its reply to Defendant's Opposition to its Bill of Costs on April 9, 2010.  [Dkt. 282.]  Plaintiff's Motion for Attorneys' Fees and Related Costs as well as Plaintiff's request in its Bill of Costs are now before the Court.

## II.   Standard of Review

Federal Rule of Civil Procedure 54(d)(2) provides that that a "claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."  Fed. R. Civ. P. 54(d)(2)(B).  "[T]he primary exception to the general rule that such fees must be proved at trial[2] is where the contract provides for recovery of attorney's fees by the prevailing party."  *Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*, 446 F. Supp. 2d 551, 578 (E.D. Va. 2006) (citing *Capital Asset Research Corp. v. Finnegan*, 216 F.3d 1268, 1270

---

[2] The parties did not have to prove the attorneys' fees and costs at trial in light of the Court's express direction that it would take up the issue of attorneys' fees and costs post-trial.  The parties did not object to the Court's suggestion to address the issue of attorneys' fees and costs post-trial.  In its March 17, 2010 Order, the Court directed Signature to submit a petition for reasonable attorneys' fees and costs no later than fifteen (15) days from the entry of the Order.  Signature has timely filed its Motion for Attorneys' Fees and Related Costs as well as its Bill of Costs.

(11th Cir. 2000)).

In this case, the source of Plaintiff's right to the attorneys' fees and related costs is the GSA entered into by the parties. In Virginia, contractual provisions shifting attorneys' fees, such as the one in this case, are valid and enforceable. *Mullins v. Richlands Nat. Bank*, 241 Va. 447, 449 (Va. 1991). Specifically, Section 19.1(n) of the GSA provides:

> In the event either party defaults in the
> performance of any of the terms and provisions
> hereof and either party places the enforcement of
> this Sublease Agreement in the hands of an
> attorney and subsequently substantially prevails
> in any ensuing litigation, the non-prevailing
> party agrees to reimburse the prevailing party for
> all reasonable expenses incurred as a result
> thereof including, but not limited to, reasonable
> attorneys['] fees and costs.

The Court notes that, in interpreting Section 19.1(n) of the GSA, it construes the contractual language according its plain and ordinary meaning. *See Appalachian Power Co. v. Greater Lynchburg Transit Co.*, 236 Va. 292, 295 (Va. 1988).

The Court in its March 17, 2010 Order found that Signature has "substantially prevailed" in this litigation. [Dkt. 273.] Even though the Virginia Supreme Court has not defined what it means to "substantially prevail," its definition of a "prevailing party" guided this Court in declaring Signature to be the party that substantially prevailed. "In the context of contractual provisions entitling the 'prevailing party' to an

6

award of attorney's fees, the Virginia Supreme Court has interpreted the term 'prevailing party' to mean 'a party in whose favor a judgment is rendered, regardless of the amount of damages awarded.'" *Tattoo Art, Inc. v. Tat Intern., LLC*, 2010 WL 1956644,*7 (E.D. Va. 2010) (citing *Sheets v. Castle*, 263 Va. 407, 413 (Va. 2002) (quoting Black's Law Dictionary 1145 (7th ed. 1999)). The prevailing party is "the party in whose favor the decision or verdict in the case is or should be rendered and judgment entered, and in determining this question the *general result* should be considered, and inquiry made as to who has, in the view of the law, succeeded in the action." *City of Richmond v. Henrico County*, 185 Va. 859, 869 (Va. 1947) (emphasis added).

The Court recognizes that Plaintiff in this case did not recover damages for its breach of contract claim based on its failure to prove the amount of damages with reasonable certainty and that Plaintiff did not win the relief of accounting and disgorgement. However, Plaintiff successfully established the rights to which it was entitled to under the GSA, established that Defendant has breached the terms of the GSA, won all remaining claims it brought against Defendant (*i.e.,* declaratory and injunctive relief) with the exception of accounting and disgorgement, and successfully defended against all of Defendant's Amended Counterclaim establishing its right under the GSA for the remaining term of the relevant agreement.

Additionally, Plaintiff has successfully defended against all affirmative defenses (*i.e.,* estoppel, waiver, equities) asserted by Defendant.  In light of the overall relief achieved by Plaintiff, the Court finds that Signature has substantially prevailed in this case, and thus is entitled to reasonable attorneys' fees and costs.  *See Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Res.*, 532 U.S. 598, 603 (2001) (holding that one can be a prevailing party if "a party has prevailed on the merits of at least some of his claims"); *see RF & P Corp. v. Little*, 247 Va. 309, 323 n.5 (Va. 1994) (holding that a party seeking attorney's fees under § 2.1-346 of the Virginia Freedom of Information Act must show that "he substantially prevailed on the merits of the case, not that he prevailed on the every issue he raised"); *see Ulloa v. QSP, Inc.*, 271 Va. 72 (Va. 2006) (holding that a plaintiff, who recovered no monetary damages, was entitled to recover attorneys' fees when defendant's breach was established pursuant to a contractual provision).

The party requesting fees, Signature in this case, bears the burden of demonstrating the reasonableness[3] of what it

---

[3] Under Virginia law, when "the contracts provide[] for attorney's fees, but [do] not fix the amount thereof, a fact finder is required to determine from the evidence what are reasonable fees under the facts and circumstances of the particular case . . . . [I]n determining a reasonable fee, the fact finder should consider such circumstances as the time consumed, the effort expended, the nature of the services rendered, and other attending circumstances." *Mullins*, 241 Va. at 449.  The Court notes that the *Johnson/Kimbrell's* factors adopted by the Fourth Circuit adequately, if not

8

seeks to recover. *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990); *Cook v. Andrews*, 7 F. Supp. 2d 733, 736 (E.D. Va. 1998). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994). The product of the reasonable fee and reasonable rate is referred to as the lodestar amount. *See Daly v. Hill*, 790 F.2d 1071, 1076 n.2 (4th Cir. 1986). In determining "what constitutes a 'reasonable' number of hours and rate . . . a district court's discretion should be guided by the following twelve factors" adopted from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)*. Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009) (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). Those *Johnson/Kimbrell's* factors are:

> (1) the time and labor expended;
>
> (2) the novelty and difficulty of the questions raised;
> (3) the skill required to properly perform the legal services rendered;
>
> (4) the attorney's opportunity costs in pressing the instant litigation;

---

more extensively, take into account all the factors pronounced in *Mullins*. Given this substantial similarity, the Court will apply the *Johnson/Kimbrell's* factors in deciding the reasonableness of Plaintiff's request for attorneys' fees and costs.

(5) the customary fee for like work;

(6) the attorney's expectations at the outset of the litigation;

(7) the time limitations imposed by the client or circumstances;

(8) the amount in controversy and the results obtained;

(9) the experience, reputation and ability of the attorney;

(10) the undesirability of the case within the  legal community in which the suit arose;

(11) the nature and length of the professional relationship between attorney and client; and

(12) attorneys' fees awards in similar cases.

*Id.* The Court need not address all twelve factors independently because "such considerations are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Freeman v. Potter*, 2006 WL 2631722,*2 (W.D. Va. 2006) (citing *Hensley*, 461 U.S. at 434 n.9).

"After determining the lodestar figure, the court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones . . . . [O]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Robinson*, 560 F.3d at 244 (internal quotations and citations omitted). Because the "degree of success obtained by the plaintiff is the 'most critical factor' in determining the reasonableness of a fee award, the district court 'may simply reduce the award to account

for the limited success.'"  *Lilienthal v. City of Suffolk*, 322 F.
Supp. 2d 667, 675 (E.D. Va. 2004) *(*quoting *Hensley*, 461 U.S. at
436-37).   There is no "precise rule or formula for making this
reduction to the lodestar amount; however, the court may either
reduce the overall award "to account for limited success" or
"identify specific hours that should be eliminated."  *Hensley*,
461 U.S. at 436-37.   The attorneys' fee award decisions are
within the discretion of the district court and should be
reviewed for abuse of discretion.  *See McDonnell v. Miller Oil
Co.*, 134 F.3d 638, 640 (4th Cir. 1998).   Within this framework,
the Court will evaluate Plaintiff's Motion for Attorneys' Fees
and Related Costs and Defendant's objections.

### III. Analysis

Pursuant to the Court's March 17, 2010 Memorandum
Opinion and Order, Plaintiff filed a motion seeking reimbursement
of the attorney's fees and related costs as well as its Bill of
Costs.  Specifically, Plaintiff seeks attorneys' fees in the
amount of $1,570,616.00 and costs and expenses in the amount of
$199,475.06.[4]   (Mem. in Supp. of Pl.'s Mot. for Attorney's Fees
and Related Costs ("Pl.'s Mem.") at 26); (Reply to Def.'s Opp. to
Mot. for Attorneys' Fees and Related Costs ("Pl.'s Reply") at

---

[4] Signature originally requested $204,350.19 in costs and expenses but
later requested this figure be reduced by $4,875.13 to account for its trial
counsel's hotel bill.

11

20.)  Plaintiff also filed its Bill of Costs seeking to recover

additional $22,065.85.[5]  (Pl.'s Bill of Costs); (Pl.'s Reply to

Def.'s Opp. to Bill of Costs at 3.)  The Court will address the

reasonableness of these requests in turn.

A.  Attorneys' Fees

   1.  Reasonable Hours

         The Court first must determine whether plaintiff

established its burden of establishing the reasonableness of the

number of hours for which it seeks recovery of fees.  To make

this determination, the Court reviewed the billing records as

well as the declaration of both Louis E. Dolan ("Mr. Dolan") and

Robert A. Angle ("Mr. Angle") submitted by Signature.  The Court

notes that it was mindful of Plaintiff's duty to exercise billing

judgment and paid careful attention to identify hours that appear

excessive, redundant, and unnecessary.  *See Hensley*, 461 U.S. at

437 ("The applicant should exercise "billing judgment" with

respect to hours worked").  With these considerations in mind,

the Court will analyze the reasonableness of the hours under each

of the *Johnson/Kimbrell's* factors.

      (1) Factor one: time and labor expended

         The first *Johnson/Kimbrell's* factor relates to the time

---

[5] Signature originally requested $22,260.85 in its Bill of Costs then
voluntarily reduced $195.00 from it to account for the costs associated with
trial subpoenas for certain witnesses.

and labor required in a case.  Plaintiff submits that the time
Signature's counsel spent in litigating this case for which it
seeks attorneys' fees was reasonable based on the subject matter
of this litigation, significant discovery burdens, necessity of
heavy motions practice to build and defend its case, and Landow's
combative litigation strategies.  (Pl.'s Mem. 9-15); (Dolan Decl.
at ¶¶ 13-16); (Angle Decl. at ¶¶ 9-11, 15-16.)  Plaintiff also
submits that it voluntarily excluded $205,102.50 from its request
for attorneys' fees relating to the work it performed on several
motions and pleadings "on which Signature was unsuccessful, or
which ultimately proved unnecessary" in its effort to keep the
fees more reasonable.  (Pl.'s Mem. at 12-13; Ex. 7.)  These
include (1) Plaintiff's Opposition to Defendant's Motion to
Dismiss Count III of the Complaint, (2) Plaintiff's Opposition to
Defendant's Motion to Dismiss Count III of the Amended Complaint,
(3) Plaintiff's Opposition to Defendant's Motion to Strike
Designation of Michael Hodges as an Expert Witness, (4)
Plaintiff's Opposition to Motion for Summary Judgment on Count
III of the Amended Complaint, (5) Plaintiff's Opposition to
Defendant's Motion in Limine to Exclude the Report and Testimony
of Plaintiff's Proposed Expert Michael Hodges, and (6)
Plaintiff's Motion for Reconsideration to Vacate the Court's June
16, 2009 trial ruling sustaining Defendant's objection to
Plaintiff's Anticipated Damages Testimony.  (Pl.'s Mem. at 13.)

13

In response, Defendant submits that despite Signature's contention, Signature performed unnecessary, redundant, and inappropriate amount of legal work on a number of motions, pleadings, and oppositions, and this warrants a significant reduction from Plaintiff's fee request.  (Def.'s Opp. at 5-13.) For example, Defendant points out that Signature's counsel spent more than 400 hours between September and December 2008 working on its preliminary injunction motion, wasted over 100 hours drafting and revising certain declarations, and expended substantial number of unnecessary hours on post-Complaint research and preparation.  (Def.'s Opp. at 8-10.)  Moreover, Defendant submits that further reduction is warranted because Mr. Dolan, whose hourly rate ranged from $475 to $605 per hour during the relevant period, spent excessive amount of time performing common tasks - such as drafting a complaint and reviewing documents - that are typically performed by a more junior attorney at a lower hourly rate.  (Def.'s Opp. at 15.)

Based on its careful independent review of the invoices and the declarations submitted by Plaintiff, the Court finds that a total number of the hours expended on this case suggests a lack of billing judgment exercised by Plaintiff's counsel.  *See Hensley,* 461 U.S. at 437.  The time records regarding Plaintiff's preliminary injunction and related declarations illustrate the

14

overall excessiveness of Plaintiff's fee request.[6]  Plaintiff's motion for preliminary injunction was filed on December 1, 2008. [Dkt. 27.]  With its motion, Plaintiff filed a 30-page memorandum in support of the motion as well as an 11-page declaration of John G. Farmer ("Mr. Farmer") and another 11-page declaration from Michael Bennett ("Mr. Bennett").  Plaintiff also filed a 20-page reply brief in response to Defendant's opposition to its preliminary injunction motion attaching, among others, a 6-page supplemental declaration of Mr. Farmer and a 5-page supplemental declaration of Mr. Bennett.  [Dkt. 38.]  Defendant submits that Plaintiff spent 119.6 hours in September 2008, 42.7 hours in October 2008, 144.6 hours in November 2008, and 114.8 hours in December 2008 on the preliminary injunction motion alone - a total of 421.7 hours.  (Def.'s Opp. at 8 n. 7.)  In addition, Signature spent approximately 50 hours in December 2008 working on the supplemental declarations of Mr. Farmer and Mr. Bennett which were attached to Signature's reply to Landow's opposition to Signature's preliminary injunction motion.  [Dkt. 38.]

Plaintiff takes the position that regardless of the

---

[6] To be sure, the Court does not discount the importance or necessity of the work Plaintiff's counsel performed on a number of unsuccessful motions for which Defendant asks reduction in fees.  *See County School Bd of York County v. A.L.,* 2007 WL 756586,*12 (E.D. Va. 2007) ("While the Court must consider the overall result of the litigation in terms of the moving party's success, no authority exists which persuades the Court to reduce the fee award for reasonable, but unsuccessful tactics within the litigation.")  The Court's basis for reduction in fees here is based on the excessive amount of work devoted to certain tasks by Plaintiff's counsel and not Plaintiff's failure to win on every single motion that it filed.

outcome of the preliminary injunction motion, "the time and
effort expended by [it] . . . created efficiencies for
Signature's trial strategy and preparation" and thus the fees
related to the motion are reasonable.  (Pl.'s Reply 9-10.)
Plaintiff also submits that an independent reviewer of the
invoices, Mr. Angle, opined that the time spent by Plaintiff's
counsel on this case was both necessary and reasonable.  (Pl.'s
Reply 9-10.)  The Court recognizes that the work performed on
researching, drafting, and arguing the preliminary injunction
motion provided important roadmap for Plaintiff with respect to
its strategy in pursuing this litigation.  However, spending
almost 420 hours, which equates to almost 53 full work days[7], on
drafting and defending a preliminary injunction motion is
unreasonable in light of Plaintiff's counsel's familiarity with
the disputed issues.  For the same reasons, spending
approximately 50 hours on drafting and revising 11-page
supplemental declarations and expending significant number of
hours on post-Complaint research and preparation appear
unreasonable to the Court.

       Plaintiff's counsel was retained by Signature in
December 2006 to enforce Signature's rights under the GSA and the
Supplemental Agreement.  (Dolan Decl. at ¶ 3.)  Even before it

---

       [7] Four hundred and twenty billable hours translate to two attorneys
working exclusively on the preliminary injunction motion for over a month,
eight hours a day, five days a week.

filed the Complaint in this instant case, Plaintiff's counsel engaged in substantial enforcement action which included drafting of lengthy demand letters and a formal mediation.  (Dolan Decl. at ¶ 4.)  Plaintiff's billing records show that Plaintiff has billed Signature approximately $74,500.00 in fees (*i.e.,* $26,048.50 in January 2007, $42,337.50 in February 2007, $3,413.00 in March 2007, and $2,643.00 in April 2007) for its services relating to pre-complaint enforcement actions.  (Dolan Decl. Ex. 6.)  During this time, Mr. Dolan and Mr. Scott Maule familiarized themselves with the relevant contracts at issue and spent significant amount of time researching the key legal issues such as the definition of certain contract terms, fuel revenue sharing, as well as Virginia leasehold contract principles. (Dolan Decl. Ex. 6.)  A substantial amount of work Signature's counsel performed on this case between December 2006 and April 2007, which should have provided solid foundation for the preliminary injunction motion, strongly bespeaks to the Court that much of the work performed on Plaintiff's preliminary injunction motion, related declarations, and post-complaint research and preparation were unnecessary and redundant.

Likewise, the Court finds that the excessive number of hours expended on drafting the Complaint and on performing common discovery tasks by Mr. Dolan, as opposed to a more junior associate, suggests to the Court Plaintiff's failure to exercise

17

billing judgment.  In August 2008, Mr. Dolan, whose rate was $590 per hour, spent approximately 30 hours drafting and revising Signature's Complaint.  (Dolan Decl. Ex. 6.)  In light of Nixon Peabody's history of representation of Signature, the number of hours Mr. Dolan spent on drafting a Complaint, which does not dramatically differ in the subject matter from the work it previously performed for Signature, seems inappropriate. Moreover, the Court feels that many of the discovery tasks performed by Mr. Dolan, such as document production and review between October 2008 and April 2009, should have been performed by a more junior attorney, which would have lowered its fee requests significantly.  (Def.'s Opp.; Ex. A.)

Based on the examples illustrated above, the Court agrees with Landow that the number of hours Plaintiff's counsel spent on its preliminary injunction motion, related declarations, Complaint, and discovery tasks are excessively high and that the total fee award Plaintiff seeks is unreasonable in light of excessive resources committed to this case.  *See Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1360 (4th Cir. 1995).  Though the Court acknowledges that it might have been Signature's litigation strategy to devote significant amount of partner time in performing many tasks that are typically reserved for a more junior attorney or to expend excessive number of hours in prosecuting its case, it would be unfair to let Landow suffer

18

from the unreasonable billing practices committed by Plaintiff's counsel.

In sum, the Court's analysis of the first *Johnson/Kimbrell's* factor above suggests that time and labor required and spent on this litigation by Plaintiff's counsel were unreasonable.  The Court's duty is to determine the attorneys' fee award that fairly and "fully compensate prevailing attorneys," *Daly v. Hill*, 790 F.2d 1071, 1082 n. 15 (4th Cir. 1986), not to "produce windfalls to [the prevailing] attorneys." *City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986). Unfortunately, the Court is unable to separate out the exact number of hours that should be reduced in calculating the lodestar amount because parties have not furnished the Court with the necessary information regarding specific number of hours devoted to each individual task performed in this case.  In light of this concern, the Court believes that a twenty percent reduction across the board from the initial lodestar amount will bring down the fee requests to a reasonable level. *See Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.")

(2) Factor two: novelty and difficulty of the questions raised

19

This factor is not disputed by the parties and does not weigh in favor of reducing the attorneys' fee award.  The Court finds that, while this case did not present a novel question, it presented complex issues of contract interpretation with some difficulty.  This finding is supported by the parties' conflicting interpretation of the relevant contracts, the length of the bench trial, large volume and complex nature of the records and testimony introduced at trial, as well as the lengthy March 17, 2010 Memorandum Opinion issued by this Court.  The Court also notes that both parties employed expert witnesses, filed extensive briefs on a number of motions relating to the ultimate resolution of the case, and provided the Court lengthy proposed findings of fact and conclusions of law.

### (3) Factors three and nine: the skill required to properly perform the legal services rendered and the experience reputation and ability of the attorney

The third and ninth *Johnson/Kimbrell's* factors are not contested by the parties and does not affect the Court's attorneys' fee award analysis.  The Court finds that Signature's counsel demonstrated that they had the proper experiences, skills, and legal acumen required to successfully litigate this complex case and to mount proper defense against a highly skilled and experienced opposing counsel.

### (4) Factor four: the attorney's opportunity costs in

20

pressing the instant litigation

The Court need not and will not consider the fourth *Johnson/Kimbrell's* factor, attorney opportunity cost in pressing this litigation, in determining the attorneys' fee award because Plaintiff does not make any argument that its counsel was precluded from pursuing work for other existing or potential clients.

### (5) Factors five and six: customary fees and the attorney's expectations at the outset of the litigation

Even though Defendant does not contest the reasonableness of Plaintiff's counsel's hourly rates in its Opposition, the Court will address the hourly rates used by Plaintiff in calculating the attorneys' fees in section III.A.2 below.  Also, the parties do not dispute or address the sixth *Johnson/Kimbrell's* factor, which relates to the attorney's expectations at the outset of the litigation, based on the fee arrangement.  Thus, the Court finds that this factor does not affect its attorneys' fee award analysis.

### (6) Factor seven: time limitations imposed

The seventh factor relates to any time limitations imposed by clients or circumstances.  Defendant does not present any argument regarding this factor.  Plaintiff submits that this Court should take into consideration that this litigation was

"conducted under demanding time constraints" as well as "the motion-heavy nature of this case." (Pl.'s Mem. at 19.)  However, the Court does not believe that time limitations in this case warrant special consideration as "[a]ll litigants are pushed to trial in this Court." *Niccoli v. Runyon*, 1995 WL 811946,*2 (E.D. Va. 1995).  Thus, the Court will not take this factor into consideration in determining the reasonable attorneys' fee award.

> (7) Factor eight:  the Amount in Controversy and the
> Results obtained

The eight *Johnson/Kimbrell's* factor discusses the amount in controversy in the case and the result ultimately obtained by the prevailing party.  Plaintiff's Amended Complaint sought Count I for Declaratory Judgment, Count II for Breach of Contract, Count III for Intentional Interference with Prospective Business or Economic Advantage[8], Count IV for an Accounting and Disgorgement, and Count V for Permanent Injunctive Relief. Defendant's Amended Counterclaim sought Count I for Declaratory Judgment regarding fuel service standard and location of the taxilane centerline, Count II for Breach of Contract, and Count III for Declaratory Judgment regarding certain permit issues. Following the bench trial, Plaintiff prevailed on all claims it sought with the exception of Counts II and IV of the Amended

---

[8] The Court granted Defendant's Motion for Summary Judgment on Count III of the Amended Complaint on June 12, 2009.  [Dkt. 180.]

Complaint.  Plaintiff also won against all Amended Counterclaim brought by Defendant.  While Plaintiff sought $4,167,910.00 as damages it suffered based on Defendant's breach, [Dkt. 258,] the Court awarded it nothing based on its failure to prove the damage element of the breach of contract claim.  The Court will further discuss and account for this factor in part III.A.5 below.

> (8) Factors ten, eleven, twelve: undesirability of the case, nature and length of professional relationship between attorney and client, attorney's fees awards in similar cases

Neither party presented any evidence concerning these three *Johnson/Kimbrell's* factors.  Thus, the Court need not and does not consider these factors in its analysis to either increase or decrease the attorneys' fees award sought by Plaintiff.

## 2.  Reasonable Rate

The hourly rates used by the prevailing party to calculate the fee reimbursement must also be reasonable.  *Rum Creek Coal Sales, Inc.*, 31 F.3d at 175 (citing *Hensley*, 461 U.S. at 433).  The determination of the reasonableness of given rates is a "fact-intensive [one] and is best guided by what attorneys earn from paying clients for similar services in similar circumstances."  *Id.* (*citing Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  To carry this burden, Signature can establish the market rate "through affidavits reciting the precise fees that

counsel with similar qualifications have received in comparable
cases; information concerning recent fee awards by courts in
comparable cases; and specific evidence of counsel's actual
billing practice or other evidence of the actual rates which
counsel can command in the market." *Spell v. McDaniel*, 824 F.2d
1380, 1402 (4th Cir. 1987) (citations omitted).  This evidence
must be submitted "[i]n addition to the attorney's own
affidavits." *Plyler,* 902 F.2d at 277.

        Plaintiff provided a declaration from its lead counsel,
Mr. Dolan, establishing that the standard hourly rates of Nixon
Peabody attorneys are based on "information concerning the
prevailing market rates for similar services offered by lawyers
of reasonable comparable skill and experience whose practice in
the same geographic areas as its attorneys."  (Dolan Decl. at
¶ 7.)  Mr. Dolan further stated that "[t]he billing rates for the
attorneys, paralegals, and others included in these invoices are
reasonable and customary rates for persons of their respective
experience."  (Dolan Decl. at ¶ 9.)  Additionally, Plaintiff
provided an affidavit from an outside lawyer, Mr. Angle, in which
he stated that "the hourly rates charged by Signature's attorneys
and other professionals fall within the range of prevailing
market rates for large law firms" in the relevant Northern
Virginia and Washington D.C. community.  (Angle Decl. at ¶ 26.)
To illustrate this point, Mr. Angle submitted to the Court a

number of relevant charts from the PriceWaterhouseCoopers ("PWC")
2009 report regarding billable rate information for the largest
firms in Northern Virginia and Washington D.C.  (Angle Decl. at
¶ 27.)  Mr. Angle also provided for the Court the National Law
Journal's annual billable rate survey which included the 2009
billable rate information of seven Washington D.C. law firms that
are comparable to Nixon Peabody in their size.  (Angle Decl. at ¶
28.)

        As a preliminary matter, the Court notes that it will
not take into consideration the billing rates included in the PWC
reports and the National Law Journal's survey to the extent that
it covers the billing rates of the attorneys in Washington D.C.
The relevant market for the purposes of determining the
prevailing rate is the "community in which the court where the
action is prosecuted sits."  *Rum Creek Coal Sales, Inc*, 31 F.3d
at 175.  As this case concerns the rights under the relevant
contracts that affect the companies that are located in Virginia,
the Court believes that the proper relevant market on which to
focus is Northern Virginia and not Washington D.C.  Also, many
district courts in this Circuit recognized that the hourly rates
charged in Washington, D.C. are generally higher than those
charged by the attorneys in Northern Virginia.  *Jackson v.
Estelle Place, LLC*, 2009 WL 1321506, 3 (E.D. Va. 2009) (citing
*Am. Canoe Ass'n v. EPA*, 138 F. Supp. 2d 722, 740-42 (E.D. Va.

25

2001)); *see* also, *Virginia Academy of Clinical Psychologists v. Blue Shield of Virginia*, 543 F.Supp. 126, 145 (E.D. Va. 1982) ("The Potomac River has divided this nation in war and in peace. Even more than the Mason-Dixon line, it separates the solid South of yore from the kaleidoscopic North.  It still serves as a physical, and a metaphysical, division between the national and international politics and concerns of the nation's capital and the more parochial problems of the Commonwealth.")

To conduct more accurate and controlled analysis regarding the reasonableness of the fees sought, the Court will identify the rates charged by Plaintiff's counsel in 2009 and compare them to the information provided by Mr. Angle regarding the 2009 Northern Virginian billing rates as surveyed by PWC. (Angle Dec. at ¶ 27.)  The Court believes that this exercise would provide the Court a representative sample as to the reasonableness of the Plaintiff's counsel's hourly rates charged between 2006 and 2009.

The 2009 rates charged by the two of Plaintiff's principal attorneys, Mr. Dolan and David D. West ("Mr. West") are $605 per hour and $290 per hour respectively.  (Dolan Dec. Ex. 1.)  The 2009 billing rate of Nicola Murphy ("Ms. Murphy"), a principal paralegal, is $185.  *Id.*  Signature also seeks attorneys' fees for other attorneys and legal professionals who worked on this matter whose 2009 billing rates range from $515

per hour to $605 per hour for partners; $290 per hour to $365 per hour for associates; and $135 per hour to $220 for paralegals. *Id.* The 2009 PWC report regarding the Northern Virginian billing rates suggests that the median billing rate for a partner with 16-20 years of legal experience like Mr. Dolan is between $518 to $603 per hour. (Angle Decl. at ¶ 27.) Also, the median billing rate for an associate with 2 years of legal experience like Mr. West is $284; and the median billing rate for a paralegal with unspecified number of years of experience ranges between $150 and $255.

It appears that both Messrs. Dolan and West's 2009 hourly billing rates slightly exceed the high end of the median range of the billing rates for the attorneys with comparable and similar legal experience located in Northern Virginia, but not significantly to warrant a reduction in its fee request. It is more difficult to measure the reasonableness of Ms. Murphy's 2009 billing rate because the 2009 PWC report does not provide sufficient information regarding the surveyed paralegal's experience level for a meaningful comparison. However, Ms. Murphy's 2009 billing rate falls within the median billing rate suggested by Mr. Angle. Based on this analysis, the Court finds that the billing rates used by Signature's counsel are reasonable and that no reduction is required based on the hourly rates used by Plaintiff in calculating its fee request.

### 3.  Lodestar Amount

        The Plaintiff requested approximately $1,570,616.00 in
fees.  After taking into account the *Johnson/Kimbrell's* factors
as evaluated above, the Court finds that an overall reduction of
by twenty percent, $314,123.20, to account for the unreasonable
and unnecessary hours spent on this case by Plaintiff's counsel,
is justified.  Reflecting this reduction, the final lodestar
amount is $1,256,492.80.

### 4.  Unrelated Unsuccessful Claims

        After calculating the lodestar figure, the "court then
should subtract fees for hours spent on unsuccessful claims
unrelated to successful ones." *Johnson v. City of Aiken*, 278 F.3d
333, 337 (4th Cir. 2002).  "Once the court has subtracted the
fees incurred for unsuccessful, unrelated claims, it then awards
some percentage of the remaining amount, depending on the degree
of success enjoyed by the plaintiff." *Id.*

        Defendant argues that Plaintiff's total fee request
should be further reduced based on the work Plaintiff has
performed on the "unsuccessful claims," that is, the work related
to signature's Breach of Contract, Intentional Interference, and
Accounting and Disgorgement claims.  (Def.'s Opp. 13-15.)  To
advance this argument, Defendant relies on the *Ulloa* case in
which the Virginia Supreme Court "stated that under contractual

provisions [shifting right to attorneys' fees] a party is not entitled to recover fees for work performed on unsuccessful claims." *Ulloa*, 271 Va. at 82 (citing *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 624 (Va. 1998)).  In response, Plaintiff submits that Defendant's narrow interpretation of *Ulloa* does not take into account a situation like here where the work a party performs to establish an element of unsuccessful claim is also used to establish an element of a successful claim.  (Pl.'s Reply at 12.)

The Court acknowledges that it is well established that no attorneys' fee should be awarded for time spent pursuing unsuccessful claims unrelated to successful claims.  *Hensley*, 461 U.S. at 434-35.  However, when Plaintiff's claims "involve a common core of facts," as in here, the Court must "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 434.  In other words, when a case involves multiple claims sharing a common core of related facts, as in here, "division of hours between claims can be an exercise in futility." *Western Insulation, LP v. Moore*, 362 Fed. Appx. 375, 381 (4th Cir. 2010) (internal citation omitted).

The Court agrees with Plaintiff and finds that the holding in *Ulloa* simply places the burden on a party seeking attorney's fees to establish that the fees sought are

29

"associated" with a successful claim.  *Ulloa*, 271 Va. at 83
(holding that a party is not "relieved of the burden to establish
to a reasonable degree of specificity" that attorneys' fees it
seeks are "associated with" a successful claim).  Thus, Plaintiff
is not precluded from recovering attorneys' fees on the work that
it performed on a successful claim just because the associated
work was also used to advance an unsuccessful claim.  Plaintiff's
work in proving the existence of enforceable obligations under
the GSA and Defendant's breach thereof was essential in
establishing Plaintiff's declaratory and injunctive claims.
Thus, the Court finds that Plaintiff's removal of the hours it
spent working on issues not associated with its successful
claims, such as the fees and expenses associated with its
proposed expert witness Michael Hodges, was sufficient and
reasonable.  The Court need not address the rest of Defendant's
argument regarding removal of the fees associated with
Plaintiff's remaining unsuccessful claims because Plaintiff has
already removed the hours associated with its tortious
interference and accounting and disgorgement claims from its fee
petition.  (Pl.'s Reply 11-12); (Dolan Decl. at ¶ 18.)

### 5.  Final Percentage Reduction Based on Degree of Success

The "degree of success obtained by the plaintiff is the
'most critical factor' in determining the reasonableness of a fee
award, [and] the district court 'may simply reduce the award to

account for the limited success.'" *Lilienthal*, 322 F.Supp.2d at
675 (quoting *Hensley*, 461 U.S. at 436). These "level of success"
and "the results obtained" factors are especially important in
assessing the reasonableness of the attorneys' fee award if, as
in this case, the prevailing party succeeded in pursuing some,
but not all of his claims for relief. *Hensley*, 461 U.S. at 434.
"A reduced fee award is appropriate if the relief, *however*
*significant*, is limited in comparison to the scope of the
litigation as a whole." *Hensley*, 461 U.S. at 440 (emphasis
added).

    Plaintiff prevailed on all claims it sought with the
exception of Counts II and IV of the Amended Complaint at trial.
Specifically, Plaintiff established that Landow breached its
duties under the relevant contracts but failed to prove the
damage prong of the breach of contract claim. Plaintiff also
successfully defended against all of Defendant's Amended
Counterclaim and affirmative defenses. While this Court does not
undermine Plaintiff substantial success in obtaining the
important declaratory judgment and permanent injunction which
stopped Landow from serving the general transient market at
Dulles prospectively, the Court cannot ignore Plaintiff's failure
to recover $4,167,910.00 in damages that it claimed to have
suffered between 2006 and 2009 resulting from Landow's breach.
Although the relief Plaintiff obtained was significant, its

recovery was somewhat limited.  Balancing Plaintiff's success in achieving its injunctive goals against its failure to collect any monetary damage, the Court will apply a ten percent reduction from the final lodestar amount applying "a rough sense of equity to its knowledge of the litigation at issue."  *Quantum Systems Integrators, Inc. v. Sprint Nextel Corp.,* 2009 WL 3423848 *8 (E.D. Va. 2009).  Reflecting this deduction of $125,649.28, which is ten percent of $1,256,492.80, the Court will award $1,130,843.60 in attorneys' fees.

## B.  Costs

Plaintiff requests a total of $199,475.06 in costs and expenses that are incurred by Nixon Peabody on Signature's behalf as well as those directly incurred by Signature.  These charges include, among other things, electronic legal research fees for Westlaw and Lexis ($6,084.38), Signature's electronic discovery vendor fees for Guidance Software ($48,073.44), expert witness fees and related costs paid to Robert Showalter ($27,253.45), fees paid for mediation services from Harold Himmelman ($14,262.50), travel expenses incurred by Signature's personnel in connection with this litigation ($32,995.43), hotel accommodations charges incurred for trial ($19,500.53[9]), court reporter fees ($7,772.28), and copying service related fees

---

[9] This figure reflects Plaintiff's voluntary reduction as suggested by Plaintiff in its Reply.  (Pl.'s Reply at 18.)

($23,459.43).   (Dolan Dec. Exs. 8-9.)

Defendant objects to all costs related to hotel
accommodations used by Signature for trial, which is $19,482.53,
because it was unreasonable for Signature to have used the Westin
given Signature's close proximity to the courthouse and the
availability of less expensive options at Signature's disposal.
(Def.'s Opp. at 18-19) (citing *U.S. ex rel. Ubl v. IIF Data
Solutions,* 2010 WL 1726767,*12 (E.D. Va. 2010)).   Signature
responds that eight out of ten rooms were occupied by Signature's
out-of-town witnesses who reside in Florida and that it
voluntarily reduced the total hotel costs by two-tenths to
account for two of the rooms used by counsel.   (Pl.'s Reply at
18.)   It is difficult for the Court to determine reasonableness
of Signature's hotel expenses because the detailed hotel invoice
was not available for its review.   However, even if the Court
were to assume that all eight rooms were necessary to accommodate
the out-of-town witnesses, the Court believes that $305[10] per
night stay at the Westin was unnecessary.   By way of example, the
2010 U.S. General Services Administration's maximum per diem
lodging rate allowed for federal employees' stay in Alexandria,
Virginia for their travel is between $170 and $229 per night,

---

[10] The Court arrived at this number by dividing $19,500.53 by eight to
account for eight night stays and again divided it by eight to account for
eight witnesses.

33

excluding taxes.[11]   Based on this information, the Court believes
that some reduction of the hotel costs is justified and will
order a reduction of $6,400 from the requested cost.

Defendant next requests a reduction of $15,000 from
Signature's request for copying service related fees.   Defendant
submits that, assuming that a reasonable cost of copying is five
cents per page, this case did not "warrant nearly that many
copies . . . and most were not used or needed."   (Def.'s Opp. at
19.)   Without any information on standard copying rates for
documents and exhibits in various colors and sizes, the Court
rejects Defendant's argument and finds that the proposed costs
related to copier charges appear reasonable.   It is clear to the
Court that the both parties had to engage in a paper-heavy
litigation based on the number of documents produced to and by
the parties, the number of depositions taken and opposed by the
parties, the number of motions filed and opposed by the parties,
and the number of exhibits introduced at trial.   Given the large
volume of contested legal issues and extensive discovery in this
case, a substantial amount of copying would be necessary and
reasonable.   Thus, the Court will not order further reduction on
the basis of excessive copying costs.

Lastly, Defendant requests that the Court only award

---

[11] This information is available at
http://www.gsa.gov/Portal/gsa/ep/contentView.do?queryYear=2010&contentType=GSA
_BASIC&contentId=17943&queryState=Virginia&noc=T.

"minimal, reasonable travel expenses" for Steven "Lee, who briefly appeared as a witness at trial" and grant nothing for travel expenses incurred by Bruce Van Allen ("Mr. Van Allen"), Wendy McDowell ("Ms. McDowell") and Joseph Goldstein ("Mr. Goldstein") who were not witnesses at trial. (Def.'s Opp. 19.) Defendant argues that Plaintiff should not recover the listed travel and related expenses for Mr. Lee, Mr. Van Allen, Ms. McDowell, and Mr. Goldstein in connection with mediation and discovery obligations because they are truly unreasonable in nature. (Def.'s Opp. 19-20.) Specifically, Defendant states that $500 per night stays at Hyatt, $1,700 airplane tickets, and $150 limousine rides should not be recoverable expenses under § 19.1(n) of the GSA because based on their unreasonableness. (Def.'s Opp. 20.) Defendant suggests that a reduction of $30,995.43 from requested $32,995.43 would bring down the request to a reasonable level. (Def.'s Opp. 21.)

In response, Signature argues that it is entitled to recover travel expenses incurred by Mr. Van Allen and Ms. McDowell because they were reasonable and necessary witnesses even though they were ultimately not called at trial. (Pl.'s Reply at 19.) Plaintiff submits that Mr. Van Allen was a potential witness who did not get called for strategic reasons and Ms. McDowell fell ill which prevented her from testifying. (Pl's Reply at 19.) Additionally, Plaintiff states that Mr.

Goldstein's presence at trial as a corporate representative was
perfectly reasonable and thus it should be able to recover
expenses related to Mr. Goldstein's travel.  (Pl.'s Reply at 19.)
Lastly, Signature's fee expert, Mr. Angle states, without
corroborating evidence for the Court to consider, that in his
opinion "these costs and expenses [incurred by Signature's
personnel in connection with this case] were necessary . . . and
well within the reasonable range."  (Angle Decl. at ¶ 36.)

        Having considered the invoices submitted by Plaintiff
and objections raised by Defendant, the Court finds that some of
the expenses incurred by these Signature personnel were
unnecessary and unreasonable.  For example, it is difficult for
the Court to believe, and Plaintiff does not explain how, that
the faxing or internet charges incurred at the Westin, frequent
"entertainment" charges in addition to meals, numerous first
class plane tickets, limousine rides or pick-up service to and
from the airport, and approximately $400 nightly stays at Hyatt
were necessary and reasonable costs related to this litigation
when cheaper more reasonable options were at the witnesses'
disposal.  In light of Plaintiff's failure to adequately
demonstrate the necessity or reasonableness of these unnecessary
expenses, the Court will reduce $16,497.72, which is fifty
percent of the claimed amount for Mr. Lee, Mr. Van Allen, Mr.
Goldstein, and Ms. McDowell's travel expenses.

In sum, reflecting the reductions that the Court found appropriate above, the Court will award Plaintiff $176,577.34 in costs and expenses, which reflects the reduction of $6,400 for hotel and $16,497.72 for travel expenses of Signature personnel from the originally requested amount of $199,475.06.

## C.  Bill of Costs

Lastly, Signature submitted its "Bill of Costs" to recover for the fees of the Clerk, costs associated with obtaining deposition transcripts, and reimbursable witness fees in the total amount of $22,065.85.[12]  Defendant objects to the costs incurred by Signature for deposition transcripts because Signature did not use any portion of the deposition transcripts of certain witnesses at trial.  (Def.'s Opp. to Bill of Costs at 1.)  "In order for the deposition to be necessary, it needs only to be 'relevant and material' for the preparation in the litigation."  *Ford v. Zalco Realty, Inc.*, 2010 WL 1228046,*3 (E.D. Va. 2010) (citing *Cofield v. Crumpler*, 179 F.R.D. 510, 518 (E.D. Va. 1998)).  Additionally even if it is not used at trial, "[a] deposition taken within the proper bounds of discovery" is normally "deemed to be 'necessarily obtained for use in the case.'"  *Cofield*, 179 F.R.D. at 518.  The Court finds that deposition of Eric Smith, Richard Ryan, Nathan Landow, Susan

---

[12] This amount reflects Plaintiff's voluntary reduction of $195 to account for fees associated with issuing trial subpoenas for John McNeeley, David Landow and Nathan Landow who were not called at trial.

Potter, and John McNeeley were all relevant and material for the preparation in this litigation and thus the transcript of these depositions were obtained necessarily.  Thus, the Court will award $22,065.86 as requested by Plaintiff in its Bill of Costs.

### IV. Conclusion

For these reasons, the Court will grant in part and deny in part Plaintiff's Motion for Attorneys' Fees and Related Costs and will grant Plaintiff's request in its Bill of Costs. To summarize, the Court will award Signature $1,130,843.60 in attorneys' fees, $176,577.34 in related costs and expenses, and $22,065.86 in Bill of Costs.

An appropriate Order will issue.


July 30, 2010                          _____/s/_____
Alexandria, Virginia                          James C. Cacheris
                                     UNITED STATES DISTRICT COURT JUDGE