**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT



AUG - 9 2011

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

———————

No. 10-1440

———————

SIGNATURE FLIGHT SUPPORT CORPORATION, a Delaware corporation,

        Plaintiff - Appellee,

    v.

LANDOW AVIATION LIMITED PARTNERSHIP, a Virginia limited partnership,

        Defendant - Appellant.

———————

No. 10-1968

———————

SIGNATURE FLIGHT SUPPORT CORPORATION, a Delaware corporation,

        Plaintiff - Appellee,

    v.

LANDOW AVIATION LIMITED PARTNERSHIP, a Virginia limited partnership,

        Defendant - Appellant.

———————

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria.  James C. Cacheris, Senior District Judge.  (1:08-cv-00955-JCC-TRJ)

———————

Argued:  May 10, 2011        Decided:  August 9, 2011

———————

Before TRAXLER, Chief Judge, and AGEE and DIAZ, Circuit Judges.

---

Affirmed by unpublished opinion. Judge Diaz wrote the opinion, in which Chief Judge Traxler and Judge Agee joined.

---

**ARGUED:** Alfred W. Putnam, Jr., DRINKER BIDDLE & REATH LLP, Philadelphia, Pennsylvania, for Appellant. Louis Edward Dolan, Jr., NIXON PEABODY LLP, Washington, D.C., for Appellee. **ON BRIEF:** D. Alicia Hickok, DRINKER BIDDLE & REATH LLP, Philadelphia, Pennsylvania; Allen V. Farber, Christopher C. Sabis, DRINKER BIDDLE & REATH LLP, Washington, D.C., for Appellant. Vernon W. Johnson, III, NIXON PEABODY LLP, Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

2

DIAZ, Circuit Judge:

Signature Flight Support Corporation subleased a parcel of undeveloped land at Dulles International Airport to Landow Aviation Limited Partnership. Unquestionably, the sublease granted Landow the authority to develop and lease an aircraft facility on the land. The scope of the parties' agreements beyond the construction and lease of the facility, however, is the basis of this appeal. Landow argues that it enjoys broad authority to service aircraft at the facility. Signature maintains that Landow may provide only certain services to a limited category of aircraft. Believing that Landow had exceeded its authority, Signature filed suit, requesting various forms of relief. Following an eight-day bench trial, the district court agreed with Signature.

Before us, Landow challenges two orders entered by the district court. In the first, the district court concluded that Landow breached its contractual obligations to Signature, issued a corresponding declaratory judgment and permanent injunction, and rejected Landow's counterclaims against Signature. In the second, the district court awarded Signature attorneys' fees, finding that Signature was the substantially prevailing party.

Our reading of the relevant contracts confirms the district court's conclusion that Landow may provide only certain services to a limited category of aircraft. We also discern no abuse of

3

discretion in the district court's decision to award Signature permanent injunctive relief. As did the district court, we reject Landow's counterclaims because they are not supported by the language of the contracts. Finally, because we agree that Signature was the prevailing party, we affirm the attorneys' fees award to Signature.

I.

In 1997, the Metropolitan Washington Airports Authority ("MWAA") and Signature entered into a Concession Contract giving Signature the right to operate a fixed base operator ("FBO") concession at Dulles International Airport in Washington, D.C.[1] Along with Landmark Aviation, Signature is one of only two FBOs at Dulles. The Dulles FBOs provide various services to non-commercial aircraft, including "based" and "transient" aircraft. Based aircraft are housed at Dulles. Transient aircraft, by contrast, only stop at Dulles en route to their final destination. FBOs charge transient aircraft for a variety of services, and, in turn, pay considerable concession fees to MWAA.

Signature's rights and responsibilities as an FBO are detailed in the Concession Contract. Section 3.02 of that

---

[1] Since the 1960s, Signature and its predecessors have operated an FBO concession at Dulles. The concession authorized in 1997 expires in 2012.

4

contract grants Signature "[t]he right to establish, conduct and operate a full service FBO concession" and notes that Signature "shall have the exclusive right . . . to provide the services authorized" by the Concession Contract.   J.A. 1233.   Section 3.03(a) outlines those "Primary Commercial Support Services" that Signature, as an FBO, "shall provide."   Id.   In addition to aircraft re-fueling, section 3.03(a)(2) directs that Signature

> shall provide the sale of ramp assistance to all
> transient aircraft . . . including, but not limited to,
> hangaring of based and transient aircraft, aircraft
> lead-in, lead-out and repositioning services; loading
> and unloading passengers, baggage and cargo; aircraft
> parking including protective storage and tie-down of
> based and transient aircraft.

Id. 1233-34.  Section 3.03(b) adds that Signature "may provide" a variety of others services, including food and beverage vending services, in-flight catering, aircraft towing, and aircraft cleaning.  Id. 1235-36.

    In addition to granting Signature an FBO concession, section 3.03(b)(7) of the Concession Contract gives Signature an option to develop a 19-acre parcel of adjoining land for "additional ramp and/or general aviation hangars."  Id. 1236.  Following the attacks of September 11, 2001, Ronald Reagan National Airport was temporarily closed, pushing increased traffic to Dulles.  In response to the increased demand, Landow approached Signature in 2002 and expressed interest in developing a hangar facility on the adjoining land.  The parties later signed a Letter of Intent

regarding development of the land. Ultimately, in 2004, Signature elected to exercise its option on the land and entered into two separate contracts to do so.

First, Signature and MWAA signed a Supplemental Agreement outlining Signature's right to "develop[] and lease" a facility on the land. Id. 1470. Although Signature was a party to the Supplemental Agreement, its terms were negotiated primarily by MWAA and Landow, with input from Signature. Second, with MWAA's approval, Signature and Landow entered into a Ground Sublease Agreement ("GSA"). Pursuant to the GSA, Signature subleased the land to Landow and Landow agreed to "design and construct" a hangar thereon. Id. 2365. Landow began construction of the Dulles Jet Center ("DJC" or "Corporate Hangar Premises") in the spring of 2005, and in October 2006, DJC began operations.

Even before DJC opened its doors, disagreements arose between Signature and Landow, specifically over whether Landow could service transient aircraft at DJC. Landow did not then and does not now contest Signature's exclusive right to provide aircraft at DJC with fuel and de-icing services under articles 25 and 27.3 of the GSA, respectively. Excepting fuel service and de-icing, however, Landow argues that it can provide other FBO services to transient aircraft. Indeed, Landow does not challenge the district court's finding that it provides services such as ground handling, taxiing, towing, and ramp assistance to

6

transient aircraft at DJC. Instead, Landow argues that provision of these services does not violate the GSA, which it frames as a "broad grant of authority to Landow." Appellant's Br. 13. Signature disagrees, arguing that Landow can provide certain FBO services to a limited category of aircraft--specifically, Signature's overflow transient aircraft directed to DJC and aircraft visiting Landow or Landow's tenants on DJC for a business purpose--but not the general transient market.

On September 15, 2008, Signature filed suit in the U.S. District Court for the Eastern District of Virginia, alleging that Landow was in breach of the GSA.[2] In addition to monetary damages, Signature sought a declaratory judgment, a permanent injunction, and an accounting and disgorgement.[3] Landow's answer to Signature's complaint included counterclaims for a declaratory judgment.[4] Specifically, Landow requested a ruling that Signature breached its obligations under the Supplemental

---

[2] We outline here only the relevant procedural background of this lengthy litigation. Claims that were dismissed before trial are not addressed.

[3] Signature subsequently moved for a preliminary injunction, which the district court denied.

[4] Landow also alleged that Signature was in breach of the GSA, but this count was subsequently dismissed with the consent of the parties.

Agreement and GSA to provide a properly sized taxilane at DJC and that Signature aircraft were encroaching on DJC property.[5]

The district court first found that Landow breached the GSA, but that Signature had failed to prove its money damages.  The district court nevertheless issued both a declaratory judgment and a permanent injunction in Signature's favor.  The district court further rejected Landow's counterclaims against Signature. Finally, the district court concluded that Signature had substantially prevailed and was entitled to attorneys' fees.[6]  In a separate order, the district court awarded Signature over $1.1 million in attorneys' fees.

## II.

Landow first challenges two key conclusions underlying the district court's declaratory and injunctive relief. Specifically, Landow argues that the district court erred in concluding that the GSA (1) bars Landow from providing all FBO services, and (2) prohibits Landow from servicing transient

---

[5] Landow also requested a declaratory judgment that Signature breached its contractual duty to provide high-quality fuel service and that Signature failed to approve permits as required by the GSA.  Although the district court rejected both claims, those decisions are not challenged on appeal.

[6] The district court also denied Signature's request for an accounting and disgorgement.

8

aircraft.  Second, Landow argues that the district court employed the wrong standard in granting injunctive relief and granted an injunction that is overbroad.  Landow contends separately that the district court erroneously rejected its counterclaims against Signature.  Finally, Landow argues that it, rather than Signature, was entitled to attorneys' fees.  We address each argument in turn.

### A.

"We review a judgment following a bench trial under a mixed standard of review--factual findings may be reversed only if clearly erroneous, while conclusions of law, including contract construction, are examined de novo."  Roanoke Cement Co. v. Falk Corp., 413 F.3d 431, 433 (4th Cir. 2005).  In deciphering disputed contractual language, the "primary focus . . . is to determine the parties' intention, which should be ascertained, whenever possible, from the language the parties employed in their agreement."  Pocahontas Mining LLC v. CNX Gas Co., LLC, 666 S.E.2d 527, 531 (Va. 2008).[7]  To determine the parties' intent "regarding specific contract provisions, we consider the document as a whole."  Id.  Where the contract "considered as a whole, is

---

[7] Section 22.2 of the GSA directs that the contract be "construed, interpreted and enforced in accordance with the laws of the Commonwealth of Virginia."  J.A. 2403.

clear, unambiguous, and explicit, a court asked to interpret such a document should look no further than the four corners of the instrument." Id.[8]

In reviewing the judgment of the district court, we consider the Concession Contract, Supplemental Agreement, and GSA. While Landow is a party only to the GSA, section 5.1 of the GSA incorporates the Supplemental Agreement. See J.A. 2377-78 (noting that the GSA "shall at all times be subject to and contingent upon . . . the Supplemental Agreement" and, if the two documents conflict, the Supplemental Agreement controls). Section 1.01 of the Supplemental Agreement, in turn, notes that it is "attached to and made a part of" the Concession Contract. Id. 1470. The district court relied on all three documents in its judgment, a decision not challenged by either party.

While Signature and Landow advance sharply differing interpretations of the contracts, both parties--and the district court--agree that the contracts are unambiguous, as do we.

---

[8] Landow is correct that Virginia law mandates interpreting ambiguous restrictive covenants related to land "in favor of the free use of property and against restrictions." Scott v. Walker, 645 S.E.2d 278, 280 (Va. 2007) (quoting Schwarzschild v. Welborne, 45 S.E.2d 152, 155 (Va. 1947)). Because Landow disavows any such ambiguity here, however, the district court properly enforced the restrictions consistent with the intent of the parties. See id. (noting that restrictive covenants are "not favored" but that it is "the general rule that . . . courts of equity will enforce restrictive covenants where the intention of the parties is clear and the restrictions are reasonable").

Reviewing the unambiguous contractual terms as a whole, we affirm the district court's declaratory judgment that

> (1) Signature has the exclusive right to service transient aircraft on the [DJC] premises except for a limited class of guests, visitors and invitees affiliated with or visiting Landow or Landow's tenants for specific business purposes; [and] (2) Landow must cease and desist from servicing transient aircraft, as well as from holding itself out as or acting as an FBO, [and] from providing the services of an FBO unless otherwise allowed.

Id. 3472-73.

1.

Landow first argues that the district court wrongly concluded that it is barred from providing all FBO services. Specifically, Landow takes issue with the district court's interpretation of section 4.1 of the GSA. Section 4.1 is a noncompetition clause, providing that Landow "shall not engage in any other use of, or activity at" DJC, except for certain "approved uses." J.A. 2376. Under section 4.1, Landow "expressly warrants and represents that it shall not, at any time . . . undertake on its own behalf . . . the following _services_" at DJC: "(a) a fixed base operation . . . or facility," as well as fueling or de-icing. Id. 3452 (emphasis added by district court). Landow suggests that section 4.1 prevents it only from "being an 'FBO'--i.e., the full-service provider of all services that all general aviation aircraft need" but does not otherwise

11

bar it from providing a limited sub-set of such services, other than fueling or de-icing services.   Appellant's Br. 31.   We disagree.

The use of the word "services" in section 4.1 of the GSA suggests that Landow is barred from more than simply assuming the role of a full-fledged FBO.   In addition, the structure of section 4.1 does not support Landow's argument.   Section 4.1(a) denies Landow the right to provide the services of a fixed-base operation or facility.   In subsections (d) and (e), respectively, Landow is further barred from providing fueling and de-icing services.   Because fueling and de-icing are typical FBO services, the district court correctly determined that section 4.1(a)'s general prohibition on rendering FBO "services" should be read broadly so as to ban Landow from providing any services typically offered by an FBO.[9]

The conclusion that the term "FBO services" encompasses more than simply the right to provide fuel or de-icing services is further buttressed by section 3.04 of the Supplemental Agreement. Pursuant to section 3.04, Signature enjoys "the exclusive right

---

[9] As discussed infra, this conclusion is not undermined by other contractual provisions permitting Landow to provide certain FBO services.   To the contrary, the parties' clear intent--as demonstrated by section 4.1 of the GSA--is that Landow may not provide FBO services, unless such authority is expressly provided for in the contracts.

to furnish [at DJC] fuel, products, and FBO services provided for under the [Concession Contract]". J.A. 1478 (emphasis added). As the district court noted, the structure of section 3.04 indicates that Signature's exclusive right vis-à-vis DJC extends beyond providing fuel or de-icing services; indeed, to hold "otherwise would render the terms of Section 3.04 meaningless and redundant." J.A. 3454. Thus, we reject Landow's contention that it need only refrain from operating as a full-fledged FBO because it is inconsistent with the language of the contracts.

Having concluded that Landow is barred generally from providing FBO services, we turn to section 3.03(a)(2) of the Concession Contract, which outlines the services required of an FBO. In particular, as an FBO, Signature "shall" provide "ramp assistance to all transient aircraft . . . including, but not limited to, hangaring of based and transient aircraft, aircraft lead-in, lead-out and repositioning services; loading and unloading passengers, baggage and cargo; aircraft parking including protective storage and tie-down of based and transient aircraft." Id. 1233. Section 3.02(b) lists a variety of other services that Signature, as an FBO, may provide. Given this comprehensive description of services that the Concession Contract leaves to Signature alone, we find no fault in the district court's conclusion that Landow is prevented from

13

"providing the services of an FBO unless otherwise allowed." Id. 3497.

On appeal, Landow contends that the district court barred it from providing any and all FBO services.  It argues that this absolute prohibition cannot be squared with specific provisions in the contracts authorizing Landow to provide certain FBO services.[10]  Here, however, Landow misreads the district court's order.  The district court explicitly limited its holding, noting that Landow was barred from providing FBO services "unless otherwise allowed." Id. 3473, 3497.  Plainly, the district court did not issue an absolute prohibition but rather, limited Landow only to those services agreed to by the parties as expressed in the contracts.  Where the parties expressly granted Landow authority to provide a specific FBO service, such authority is "otherwise allowed" and thus, is not disturbed by the district court's ruling.  Landow's argument to the contrary is without merit.

---

[10] For example, section 28.1 of the GSA states that both Signature and Landow can tow aircraft.  Additionally, section 4.04 of the Supplemental Agreement grants Landow the right to hangar aircraft.

14

2.

Landow also challenges the district court's conclusion that it is barred from servicing the general transient aircraft market. Landow notes that the contracts employ terms such as "guests," "visitors," "invitees," "licensees," and "customers" when describing those persons and entities whom Landow may serve at DJC. Landow argues that were it limited to servicing only based aircraft, such words would be surplusage. Instead, Landow asserts that these terms--which are not defined in the contracts--were meant to refer to transient aircraft in general.

The district court rejected this argument, concluding that while the terms may be undefined, they "are not ambiguous with regard to Signature's exclusive right to service the general transient aircraft market." J.A. 3458. Rather, it concluded that the terms in question reference a "limited sub-set of transient aircraft authorized to use DJC for specific business purposes." Id. 3462. We agree with the district court.

Initially, we note that the economics are not on Landow's side. Under section 5.04(a) of the Supplemental Agreement, Landow, "its Subtenants, and the guests and visitors [of Landow and its subtenants]" on the DJC, are excused from paying parking fees to MWAA. Id. 1498. Defining "visitors" et al. to encompass all transient aircraft would allow such aircraft to avoid paying fees to MWAA by bypassing Signature and Landmark--the two

15

approved FBOs at Dulles--in favor of Landow, a party that did not compete for and was not awarded the right to operate an FBO concession. Such a result is illogical.

Next, we look to the contract language, returning to section 4.1 of the GSA, which limits Landow to only "approved uses" of DJC. Id. 2376. The "approved uses" are specified in article 1 of the GSA and sections 3.03, 3.04 and 4.02 of the Supplemental Agreement. Id. First, article 1 of the GSA notes that DJC "shall only be used for . . . aircraft owned and/or operated by Sublessee and 'Sublessee's Representatives' . . . and customers of Signature." Id. 2366. Landow is defined as the "Sublessee," and Landow's tenants, concessionaires, licensees, occupants of DJC, employees, contractors, subcontractors, subtenants, agents, and invitees are the "Sublessee's Representatives." Id. 2365, 2376. Second, section 3.03 of the Supplemental Agreement similarly states that DJC "shall be used for . . . aircraft owned and/or operated by" Landow, its subtenants, guests and visitors of Landow and its subtenants, and customers of Landow, its subtenants, and Signature. Id. 1474.

Further, section 3.04 of the Supplemental Agreement grants Signature the right to provide fuel, products, and FBO services to Landow, its subtenants, "guests, visitors, and invitees of" Landow and its subtenants, and customers of Signature "authorized to use" DJC. Id. 1478. Finally, section 4.02 of the

16

Supplemental Agreement notes that Landow may employ and use its own personnel to "maintain and equip aircraft owned and/or operated by" Landow's subtenants, and guests, visitors, and invitees of Landow or its subtenants. Id. 1488. On a "temporary basis," Landow may provide "emergency maintenance and service . . . to the transient aircraft of guests, visitors and invitees of [Landow] or Subtenants with whom [Landow] or Subtenants may elect to conduct business." Id.

We recite these definitions for this reason: in specifying the "approved uses" of DJC, the only reference to "transient aircraft" in the list of DJC's approved uses is in section 4.02 of the Supplemental Agreement, which authorizes Landow to provide "emergency maintenance and service on a temporary basis to the transient aircraft of guests, visitors and invitees." Id. 1488. If, as Landow argues, the parties intended for Landow to service transient aircraft generally, it makes little sense to carve out specific authority for Landow on an emergency and temporary basis. Outside of this narrow exception, however, Landow can point to no express grant of authority to service transient aircraft on DJC. Conversely, section 3.03(a)(2) of the Concession Contract clearly establishes Signature's right to service transient aircraft generally. Id. 1233 ("Signature . . . shall provide the sale of ramp assistance to all transient aircraft").

17

Unable to point to an express grant of authority to support its argument, Landow instead highlights another provision in the GSA that, at first blush, appears to contemplate Landow's service of transient aircraft. Article 25.2 of the GSA lists two fuel pricing groups for aircraft at DJC, one for "Corporate Hangar Premises-Based Aircraft" and one for "Transient Aircraft." Id. 2405-06. The inclusion of the second pricing group, Landow argues, is inexplicable unless the parties intended for Landow to service transients. The district court did not address article 25 in its opinion, but during oral argument, Signature's counsel explained that Signature "absolutely" envisioned two sets of transient aircraft utilizing DJC: 1) overflow transient aircraft directed by Signature to DJC, and 2) a limited sub-set of transient aircraft visiting DJC for a business purpose that Landow would be allowed to service. According to Signature, Article 25's reference to "transient aircraft" was included to protect these two groups from higher fuel prices.[11]

---

[11] To illustrate the second category of transient aircraft, Signature offered the following example: General Dynamics, a subtenant of Landow, leases an entire hangar at DJC. One or more of General Dynamics' subdivisions, however, hangars its aircraft elsewhere. If a General Dynamics subdivision representative were to fly to DJC for a meeting with General Dynamics, that aircraft would fall within the sub-set of transient aircraft visiting DJC for a specific business purpose, which Landow could then service.

Read as a whole, we agree with the district court that the contracts do not provide Landow a blank check but rather a limited grant of authority to provide certain FBO services to a specified class of transient aircraft. Because the broad rights that Landow seeks are not provided for in the contracts, the district court correctly declined to add them. Accordingly, we affirm the ruling of the district court.

### B.

Next, we turn to the district court's decision to enter a permanent injunction. We review a grant or denial of a permanent injunction for abuse of discretion, reviewing factual findings for clear error and legal conclusions de novo. <u>Wilson v. Office of Civilian Health & Med. Programs of the Unif. Servs.</u>, 65 F.3d 361, 363-64 (4th Cir. 1995). In awarding Signature a permanent injunction, the district court concluded that Signature had shown (1) an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate; (3) that the balance of hardships between the plaintiff and defendant favors an injunction; and (4) that the public interest "would not be disserved by a permanent injunction." <u>See</u> <u>Christopher Phelps & Assocs., LLC v. Galloway</u>, 492 F.3d 532, 543 (4th Cir. 2007). We affirm.

19

First, we reject Landow's argument that in entering a permanent injunction, the district court placed its "thumb on the scales," as prohibited by the Supreme Court in Monsanto Co. v. Geertson Seed Farms, 130 S.Ct. 2743, 2757 (2010). In Monsanto, the Supreme Court rejected the lower courts' apparent presumption that an injunction is the proper remedy for a violation of the National Environmental Policy Act of 1969 and clarified that "an injunction should issue only if the traditional four-factor test is satisfied." Id. Here, however, the district court did not rely on any presumption, but rather considered each of the four requirements of the traditional test for injunctive relief and found that Signature had met its burden.

The district found first that Signature had been harmed, noting that DJC "caused Signature to lose some of its customer base and goodwill." J.A. 3475. We review a finding of irreparable harm for clear error. Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 552 (4th Cir. 1994). Here, the district court specifically relied on Multi-Channel, where we affirmed a trial court's entry of a preliminary injunction due to the "possibility" that the company would suffer a "permanent loss of customers to a competitor or the loss of goodwill." Id.

On appeal, Landow contends that Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008) undermines Multi-

20

Channel. In _Winter_, the Supreme Court found such a "possibility" standard "too lenient," requiring instead that a plaintiff show "likely" irreparable injury. _Id._ at 22. _Winter_, however, was a preliminary injunction case where injury had not been established. _Id._ at 21 (noting that although the challenged practice "began 40 years ago, there has been no documented case" of the kind of harm alleged). Here, during an eight-day bench trial, Signature demonstrated not only a possibility of harm, but harm in fact. _See_ J.A. 3475 ("Landow's violation of its contractual duties _caused_ Signature to lose some of its customer base and goodwill.") (emphasis added). Thus, the harm suffered by Signature satisfies the _Winter_ standard.

Further, the district court found that absent an injunction, Landow will continue to breach the contracts and Signature "will continue to lose its customers, possibly lose its opportunity to attract new customers, and goodwill in the industry." _Id._ Because such losses were difficult to determine, the district court concluded that Signature had shown an irreparable injury. In so finding, the district court did not clearly err.

Similarly, we find that monetary damages are inadequate. As noted by the district court, "[i]t would be neither adequate or [sic] efficient" to force Signature to bring suit each time Landow services another transient aircraft. _Id._ Such an

unsatisfactory result was far from theoretical given Landow's repeated refusal to accept Signature's view of the contracts.

For example, in August 2008, MWAA responded to a complaint by Landow regarding Signature's fuel service. In the course of rejecting Landow's claims, MWAA warned that "Landow should not be promoting [DJC] as an FBO for transient aircraft," and added that "Signature and Landmark Aviation are the only FBOs at Dulles Airport and it is the [MWAA's] intent that [Signature and Landmark] handle the transient general aviation business." Id. 1941. As the district court noted, although Landow indicated that it would abide by MWAA's interpretation, it failed to do so. The injunction thus bars Landow from further breach, without requiring Signature to repeatedly seek legal redress.

Additionally, because the injunction merely restores the contractual rights of the parties, the balance of the hardships favors Signature. Put another way, the economic harm that Landow will suffer does not outweigh the harm to Signature, given that the injunction is simply enforcing Landow's obligations under the GSA.

Nor is the public interest disserved by the injunction. Signature competed for and won the right to operate as an FBO at Dulles. MWAA is the public entity tasked with awarding FBO concessions at Dulles and the testimony at trial showed that "it was never MWAA's intent to allow Landow to handle and service the

22

transient aircraft market at Dulles." Id. 3447. Recognizing the contractually bargained-for rights of the parties and upholding the authority of MWAA cannot be said to disservice the public.

Finally, because injunctive relief ultimately rests in the discretion of the court, the district court also considered whether the equities supported the injunction. As part of its equitable analysis, the district court first considered Landow's affirmative defenses of estoppel and waiver. Under Virginia law, "[e]stoppel . . . enjoins one whose action or inaction has induced reliance by another from benefiting from a change in his position at the expense of the other." Emp'rs Commercial Union Ins. Co. of Am. v. Great Am. Ins. Co., 200 S.E.2d 560, 562 (Va. 1973). Waiver "is an intentional relinquishment of a known right." Stanley's Cafeteria, Inc. v. Abramson, 306 S.E.2d 870, 873 (Va. 1983). In rejecting both defenses, the court emphasized that the evidence showed that Signature "never suggested to Landow that it could service transients or provide FBO services" and "promptly informed Landow regarding Landow's violation." J.A. 3478-79.

Additionally, the district court concluded that it was Landow, not Signature, that "might have unclean hands." Id. 3479. Under Virginia law, a party seeking equitable relief "must come with clean hands"--that is, free of "fraud, illegality, tortious conduct or the like" regarding the matter in question.

23

*Cline v. Berg*, 639 S.E.2d 231, 233-34 (Va. 2007) (citing <u>Richards v. Musselman</u>, 267 S.E.2d 164, 166 n.1 (Va. 1980)).  Highlighting the unrebutted trial testimony, the district court found that Nathan Landow, who negotiated the Supplemental Agreement and GSA, and signed the GSA on Landow's behalf,

> was aware of DJC's obligation not to service the general transient markets . . ., spent too much money in constructing DJC, realized that he had gotten himself into a bad deal, and tried to walk away from it.  When he could not . . ., he knowingly violated the terms of the GSA.

J.A. 3483.  Indeed, although Landow's loan application for the construction of DJC was for $23 million, it ultimately spent over $37 million on the project.  Here, following a lengthy bench trial, the district court concluded that the equities favored Signature.  We agree.  See *Cline*, 639 S.E.2d at 234 ("Application of the [unclean hands] doctrine turns upon the facts of each particular case and is therefore left to the sound discretion of the fact finder.").

We also reject Landow's argument that the injunction is overbroad.  As with the declaratory judgment, the district court's injunction was limited, barring Landow from "acting or holding [DJC] out as an FBO" and from servicing transient aircraft other than the limited sub-set of aircraft "previously recognized." J.A. 3497-98.  As such, the injunction goes only as far as the contracts provide.  Accordingly, we find no abuse of

24

discretion in the district court's decision to issue the injunction.

C.

Landow further argues that the district court wrongly rejected its counterclaims alleging that Signature had not provided a proper taxilane at DJC, and that Signature aircraft were encroaching on DJC property without permission. We disagree.

First, under section 2.1 of the GSA, it is Landow, not Signature, that is tasked with constructing DJC, including the taxilane. Second, sections 10.2(a) and (b) of the GSA grant Signature the right to move aircraft onto designated areas of DJC subject to Landow's "sole but reasonable discretion." J.A. 2385. There is, however, no requirement that Signature seek Landow's approval prior to moving aircraft into this area. Further, the district court's order found that "if Landow, in its reasonable discretion, believes that there is no availability of vacant space" on DJC, "it may then have right to refuse Signature from entering DJC's premises." Id. 3493. We find the district court's analysis as to the counterclaims sound and therefore affirm.

D.

Finally, Landow argues that it, not Signature, was entitled to attorneys' fees.  Section 19.1(n) of the GSA directs that upon breach and ensuing litigation, the prevailing party be awarded attorneys' fees.  Under Virginia law, the "prevailing party" is the party "in whose favor a judgment is rendered, regardless of the amount of damages awarded."  Sheets v. Castle, 559 S.E.2d 616, 620 (Va. 2002) (citing Black's Law Dictionary, 1145 (7th ed. 1999)).

Although Signature was not awarded monetary damages on its breach of contract claim, it successfully established its rights under the contracts as well as Landow's breach, prevailed in its requests for a declaratory judgment and injunctive relief, and defended against Landow's counterclaims.  Given this result, we think it clear that Signature was the "prevailing party" as that term is applied under Virginia law.  Accordingly, we affirm the district court's award of attorneys' fees.[12]

---

[12] Because we affirm the attorneys' fees award, we do not address Signature's argument that by paying the award in full, Landow waived its right to appeal the judgment.

26

## III.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED